**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**
A CAPITAL STOCK COMPANY
175 Water Street
New York, N.Y. 10038

POLICY NUMBER: *965-90-89*          REPLACEMENT OF POLICY NUMBER: *625-34-93*

### FINANCIAL INSTITUTION PROFESSIONAL LIABILITY INSURANCE

#### (Broad Form)

**NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.**

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER SHALL ADVANCE DEFENSE COSTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

### DECLARATIONS

ITEM 1.   NAMED INSURED:   *HUNTINGTON BANCSHARES, INC.*


MAILING ADDRESS:   *41 SOUTH HIGH STREET*
*COLUMBUS, OH 43215*

ITEM 2.   POLICY PERIOD: From: *January 1, 2007*   To: *January 1, 2008*
(12:01 A.M. standard time at the address stated in Item 1)

ITEM 3.   LIMIT OF LIABILITY: *$15,000,000*   aggregate for all **Loss**
(including Defense Costs)

ITEM 4.   RETENTION and COINSURANCE:
(for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts)

Judgments, Settlements and Defense
Costs (non-Indemnifiable Loss)          None

Judgments, Settlements and Defense Costs (Indemnifiable Loss):

A. *$10,000,000*   Retention Amount, plus 25% Coinsurance

subject to a maximum of *$10,000,000*

*7015149*

**Exhibit
A**

68017 (1/97)          1

Acordia
580 N. Fourth Street
Suite 400
Columbus, OH 43215-2153

B. *$10,000,000*   Retention Amount (no Coinsurance)

ITEM 5.   CONTINUITY DATE: *October 6, 1998*

ITEM 6.   PREMIUM: *$284,592*

ITEM 7.   BROKER: *ACORDIA OF OHIO LLC*
          *580 N 4TH ST #400*
          *COLUMBUS, OH 43215-2153*

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations Page by its President and a Secretary and also signed by a duly authorized representative of the Insurer or countersigned in states where applicable.

*Elizabeth M. Tuck*

SECRETARY                                          PRESIDENT

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*7015149*

68017 (1/97)                        2

 **AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**

### FINANCIAL INSTITUTION PROFESSIONAL LIABILITY
### INSURANCE POLICY
#### (Broad Form)

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the application attached hereto and made a part hereof, and its attachments and the material incorporated therein, and subject to the Limit of Liability and all other terms and conditions contained herein, American International Specialty Lines Insurance Company, herein called the "Insurer", agrees as follows:

1. **INSURING AGREEMENT**

   This policy shall pay the Loss of the Insured arising from a Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services. The Insurer shall, in accordance with and subject to Clause 8, DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING THE ADVANCE -MENT OF DEFENSE COSTS), advance Defense Costs of such Claim prior to its final disposition.

2. **DEFINITIONS**

   (a) "Claim" means:

       (1) a written demand for monetary or non–monetary relief; or

       (2) a civil or arbitration proceeding for monetary or non–monetary relief which is commenced by:

           (i) service of a complaint or similar pleading; or

           (ii) receipt or filing of a notice of charges.

   (b) "Company" means the Named Insured designated in Item 1 of the Declarations and any Subsidiary thereof.

   (c) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or employees of the Company.

   (d) "Insured" means:

       (1) the Company;

       (2) any past, present or future director, officer or employee of the Company, but only while acting in the scope of his or her duties as such (sometimes hereinafter referred to as a "Natural Person Insured").

   (e) "Investment Banking" means, but is not limited to, the underwriting, syndicating or promotion of any debt or equity security; any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, lev

-eraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the Company for its own account or any disclosure requirements in connection with any of the foregoing. Investment Banking also includes the rendering of advice or recommendations or the rendering of a fairness opinion in connection with any of the foregoing.

(f) "Loan Servicing" means the servicing of any loan, lease or extension of credit (whether consumer, commercial, mortgage banking or otherwise, but not including financing for investment banking, or leveraged or management buy-outs). Loan Servicing includes but is not limited to the following servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's creditworthiness, determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property). Loan Servicing shall not include any act of restructure, termination, transfer, repossession or foreclosure, or any act arising out of the operation or control of any entity or property that the Insured acquired as security or collateral for any loan, lease or extension of credit.

(g) "Loss" means damages, judgments, settlements and Defense Costs, and any payment made by the Insurer pursuant to Clause 19, COST OF CORRECTIONS; however, Loss shall not include:

(i) salaries of any Insured;

(ii) the cost of complying with any settlement for or award of non-monetary relief

(iii) loss of the actual money, securities, property or other items of value in the custody or control of the Insureds, or its agents, or in transit;

(iv) civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed; notwithstanding the foregoing, Loss shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than the amount of compensatory damages awarded;

(v) amounts actually reimbursed to the Insureds by the trust, estate, plan or fund or similar entity or the sponsor thereof;

(vi) principal, interest or other monies accrued or due (either now or in the future) but not yet paid to the Company as a result of any loan, lease or extension of credit; and

(vii) fees, commissions, or other compensation for any Professional Services rendered or required to be rendered by the Insured or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation.

(h) "Policy Period" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(i) "Professional Services" means those services of the Company permitted by law or regulation rendered by an Insured at any time whether before, on or after the inception date of this policy, pursuant to an agreement with the customer or client as long as such service is rendered for or on behalf of a customer or client of the Company: (i) in return for a fee, commission or other compensation ("Compensation"), or (ii) without Compensation as long as such non-compensated services are rendered in conjunction with services rendered for Compensation.

(j) "Subsidiary" means:

(1) a corporation of which the Named Insured owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries;

(2) automatically a corporation whose assets total less than 10% of the total consolidated assets of the Company as of the inception date of this policy and which becomes a Subsidiary during the Policy Period. The Named Insured shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

(3) a corporation which becomes a Subsidiary during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Insured shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Insured paying when due any additional premium required by the Insurer relating to such new Subsidiary.

A corporation becomes a Subsidiary when the Named Insured owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the Named Insured ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against a Subsidiary or any director, officer or employee thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(k) "Wrongful Act" means any act, error or omission in the rendering of or failure to render Professional Services; provided, however, the term "Wrongful Act" shall not mean any act, error or omission in connection with an Insured's service as a director, officer, trustee, employee or member of any entity other than the Company or any trust or estate administered by the Company pursuant to a written agreement.

**3.** **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of any deceased Natural Person Insured, and the legal representatives of such Insured in the event of incompetency, insolvency or bankruptcy, who were Insureds at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of a Natural Person Insured for a Claim arising solely out of his or her status as the spouse of such Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by such Insured and the spouse, or property transferred from such Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of the Insured, subject to this policy's terms, conditions and exclusions.

**4.** **EXCLUSIONS**

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a) arising out of, based upon or attributable to any in fact conflict of interest or the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b) arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act;

[The Wrongful Act of a Natural Person Insured shall not be imputed to any other Natural Person Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) and 4(b)]

(c) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(d) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date set forth in Item 5 of the Declarations, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

(e) alleging any Wrongful Act which, as the Continuity Date set forth in Item 5 of the Declarations, any Insured knew or could have reasonably foreseen could lead to a Claim;

(f) brought by or on behalf of any Insured, or the successors or assigns of any Insured; or by or on behalf of any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; provided, however, this exclusion shall not apply to any Claim brought by a Natural Person Insured or brought by any business enterprise operated, managed or owned by such Natural Person Insured as long as such Claim is brought solely in such claimant's capacity as a customer or client of the

Company and is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any other Insured;

(g) alleging, arising out of, based upon or attributable to the notarized certification or acknowledgment, or any guarantee of a signature without the physical appearance at the time of said notarization, acknowledgment or guarantee of the person who is or claims to be the person signing the instrument;

(h) alleging, arising out of, based upon or attributable to:

   (1) the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any security of the Company; or

   (2) any Claim brought by a securities holder of the Company whether directly, or derivatively on behalf of the Company, or by class action;

   provided, however, this exclusion shall not apply to any Claim brought solely in a claimant's capacity as a customer or client of the Company and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured;

(i) brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-govern-mental or self-regulatory entity, whether directly or indirectly, and whether brought in its capacity as receiver, conservator, liquidator, securities holder or assignee of the Company, its security holders, its depositors or creditors or in any other capacity and whether brought in its own name or in the name of any other entity; however, this exclusion shall not apply to any Claim brought solely in such entity's capacity as a customer or client of the Company and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured;

(j) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

   (1) the actual, alleged, threatened or potential discharge, dispersal, release or escape of pollutants; or

   (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

   Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead paint, asbestos and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed;

(k) for bodily injury, sickness, emotional or mental distress, disease or death of any person, or loss or damage to or destruction of any property from any cause, including the loss of use thereof, or of material that violates a person's right of privacy;

(l) for libel or slander or other defamatory or disparaging material; provided, however, this exclusion shall not apply to any Claim brought by a customer or client of the Company alleging Wrongful Acts in connection with statements by an Insured relating to such customer's or client's creditworthiness;

(m)    alleging, arising out of, based upon or attributable to the bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment by, any broker or dealer in securities or commodities, or any bank or banking firm, or any insurance or reinsurance entity, investment company or investment banker or any Insured; provided, however, this exclusion will not apply to Wrongful Acts solely in connection with an Insured's investment on the behalf of the claimant in the stock of any of the foregoing entities;

(n)    alleging, arising out of, based upon or attributable to the purchase, sale, participation, grant, commitment, restructure, termination, transfer, repossession or foreclosure of any loan, lease or extension of credit, or any failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease or extension of credit; or arising out of the operation or control of any entity or property that the insured acquired as security or collateral for any loan, lease or extension of credit; provided, however, this exclusion shall not apply to Claims solely alleging Wrongful Acts in connection with Loan Servicing;

(o)    for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law, but solely with respect to any employee benefit plan sponsored or established by the Company for the benefit of the Company's employees;

(p)    alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, diminution in value of money, securities, property or any other item of value, unless such diminution in value is caused by a Wrongful Act of the Insured in the execution or implementation of investment advice or investment decisions;

(q)    alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any Investment Banking or market maker activities, including but not limited to any disclosure requirements in connection with the foregoing;

(r)    alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown or malfunction of any machine or system of machines;

(s)    alleging, arising out of, based upon or attributable to any use by any Insured of, or aiding and abetting by any Insured in the use of, or participation after the fact by any Insured in the use of, non-public information in a manner prohibited by the laws of the United States including but not limited to the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10(b)(5) promulgated thereunder, or prohibited by the laws of any state, commonwealth, territory or subdivision thereof, or prohibited by the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing;

(t)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the hazardous properties of nuclear material including but not limited to the actual, alleged, threatened or potential ionizing radiations or contamination by radioactivity from nuclear fuel, nuclear waste or combustion of nuclear fuel, or the radioactive, toxic, explosive or hazardous properties of any explosive nuclear assembly or nuclear component thereof. Hazardous properties include, but are not limited to, radioactive, toxic or explosive properties.

5. **LIMIT OF LIABILITY – (FOR ALL LOSS–INCLUDING DEFENSE COSTS)**

The aggregate Limit of Liability stated in Item 3 of the Declarations is the limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein; however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or the Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or the Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

6. **RETENTION and COINSURANCE CLAUSE**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount stated in Item 4 of the Declarations, such Retention Amount to be borne by the Insureds and shall remain uninsured, with regard to all Loss arising from any Claim: (i) against the Company or (ii) against a Natural Person Insured for which the Company has indemnified or is permitted or required to indemnify ("Indemnifiable Loss").

With respect to Item 4A of the Declarations only, the Insurer shall be liable to pay 75% of Loss excess of the Retention Amount set forth in Item 4A of the Declarations up to the Limit of Liability described in Clause 5 with regard to all Loss arising from any Claim: (i) against the Company or (ii) against a Natural Person Insured for which the Company has indemnified or is permitted or required to indemnify ("Indemnifiable Loss"), it being a condition of this insurance that the remaining 25% of each and every Loss excess of the Item 4A Retention Amount shall be borne by the Insureds and shall remain uninsured.

The amount of the Loss to be borne by the Insureds pursuant to this clause shall be the SMALLER of the following:

A. the amount set forth in Item 4B of the Declarations, or

B. the Retention Amount set forth in Item 4A of the Declarations plus an amount equal to: Loss excess of the Item 4A Retention Amount multiplied by the Coinsurance percentage set forth in Item 4A of the Declarations.

In no event shall the Insured's obligation under this clause be greater than the Retention Amount set forth in Item 4B of the Declarations which shall remain the maximum amount of Loss to be borne by the Insureds under this clause. Further, a single Retention Amount (and Coinsurance percentage, if applicable) shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

7. **NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to A.I. Management and Professional Liability Claims Adjusters, P.O. Box 1000, New York, NY 10268. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

68018 (1/97)

(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable and either:

    (1) anytime during the Policy Period or during the Discovery Period (if applicable); or

    (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c) If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of the Claim. Such advance payments by the Insurer shall be repaid to the Insurer by the Insured, severally according to their respective interests, in the event and to the exten tthat the Insured shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.**

The Insurer shall have the right to effectively associate with the Company and the Insureds in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

The Insurer may make any settlement of any Claim it deems expedient with respect to any Insured subject to such Insured's written consent. If any Insured withholds consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer.

9.   **ACQUISITION OR DISPOSITION OF ASSETS**

If during the Policy Period the Company acquires the assets or assets under management of another organization, coverage as is afforded under this policy, subject to its terms, conditions and exclusions, shall apply to Professional Services rendered in connection with such acquired assets in accordance with the following:

   (a)   automatically in the case where such acquired assets total less than 10% of the total consolidated assets or assets under management, as the case may be, of the Company as of the inception date of this policy. The Named Insured shall provide the Insurer with full particulars of the new assets before the end of the Policy Period;

   (b)   in the case where such acquired assets total 10% or more of the total consolidated assets or assets under management, as the case may be, of the Company as of the inception date of this policy but only upon the condition that within 90 days of the acquisition, the Named Insured shall have provided the Insurer with full particulars of the new assets and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new assets. Further, coverage as shall be afforded to the new assets is conditioned upon the Named Insured paying when due any additional premium required by the Insurer relating to such new assets.

In all events, coverage as is afforded with respect to a Claim alleging Professional Services in connection with assets acquired by the Company shall only apply for Wrongful Acts committed or allegedly committed during the time such assets were owned by the Company.

10.   **DISCOVERY CLAUSE**

Except as indicated below, if the Insurer or the Named Insured shall cancel or refuse to renew this policy, the Named Insured shall have the right, upon payment of an additional premium of 75% of the "full annual premium", to a period of one year following the effective date of such cancellation or nonrenewal (herein referred to as the Discovery Period) in which to give to the Insurer written notice of Claims first made against the Insureds during said one year period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election, together with the additional premium due is received by the Insurer within thirty (30) days of the effective date of cancellation or non-renewal.

In the event of a Transaction, as defined in Clause 12, the Named Insured shall have the right, within thirty (30) days of the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Insured may request. The Insurer

shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The offer by the Insurer of renewal terms, conditions, Limits of Liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Insured, or its agent, at any time only by mailing written prior notice to the Insurer stating when thereafter such cancellation shall be effective, or by surrender of this policy to the Insurer or its authorized agent. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Insured or by mailing to the Named Insured, by registered, certified, or other first class mail, at the Named Insured's address as shown in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter, or ten (10) days thereafter in the event of nonpayment of premium when due, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Insured, the Insurer shall retain the customary short rate proportion of the premium herein.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL OF NAMED INSURED

If during the Policy Period:

a.   the Named Insured shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

b.   any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Insured, or acquires the voting rights of such an amount of such securities;

(either of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act

occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Insured shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Insured shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

13. **SUBROGATION**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, including salvage and any indemnification from a customer or client of the Company, and the Company and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Company and/or the Insureds. The Insureds shall take no action, without the consent of the Insurer, to limit or negate the rights of the Insurer to recover any payments made under this policy from any person or entity that may be contractually obligated to reimburse the Insureds for the Insureds' loss. However, in no event shall the Insurer exercise its rights of subrogation against an Insured, other than in its capacity as a customer or client of the Company, under this policy unless such Insured has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled, or arising out of an act other than a covered Professional Service by such other Insured.

14. **OTHER INSURANCE**

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, as well as any indemnification from any customer or client of the Company ("Customer Indemnification") which the Insured has actually received. With respect to Customer Indemnification which is not paid by such indemnitor, this policy shall pay such Loss as is otherwise covered under this policy, however, the Insureds agree as a condition for such payment to provide whatever assistance and cooperation is required by the Insurer to enforce the Insurer's rights as subrogee.

15. **NOTICE AND AUTHORITY**

It is agreed that the Named Insured shall act on behalf of its Subsidiaries and all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period.

16. **ASSIGNMENT**

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

17. **ALTERNATIVE DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to

the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then- prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declaration's page as the mailing address for the Named Insured. The Named Insured shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. COST OF CORRECTIONS

Subject to all other terms, conditions and exclusions of this policy, the Insurer will reimburse the Insured for the costs incurred by the Insured, with the Insurer's prior written consent, to correct direct monetary damages ("Damages") to a customer or

client of the Company resulting from any Wrongful Act of an Insured in the rendering or failure to render Professional Services. The Insureds shall, as a condition precedent to the obligations of the Insurer under this clause, give written notice to the Insurer pursuant to clause 7(c) of this policy of circumstances which has resulted in the Damages to the customer or client of the Company. Coverage under this clause is subject to the following additional conditions:

1.  such Wrongful Act occurs during or prior to the Policy Period or Discovery Period (if applicable); and

2.  such Wrongful Act arises out of the Insured's failure to follow directions from a customer or client in connection with the Non-discretionary Investment of the customer's or client's assets; and

3.  such Wrongful Act arises in the ordinary course of the Company's operations and, if not corrected, would automatically result in a Damages to the customer or client of the Company; and

4.  such Wrongful Act would, in the absence of any correction, have resulted in covered Loss under this policy; provided, however, that nothing contained herein shall obligate the Insurer to reimburse the Insured for Damages:

    (a) arising out of any known Wrongful Act; or

    (b) arising out of the wire or electronic transfer of funds; or

    (c) for any costs, charges or expenses required to be incurred by the Insured pursuant to any contractual obligation to a customer or client of the Company, if such obligation does not otherwise constitute covered Loss under this policy and would not otherwise exist absent such contractual obligation (such uncovered Loss shall include, but not be limited to, the guaranteeing of any rate of return); or

    (d) or that part of Damages, for which no coverage would have been afforded under this policy had the Wrongful Act resulted in a Claim.

In the event of coverage under this clause, the giving of the aforementioned notice of circumstances by the Insured shall be deemed to be notice of a Claim made against an Insured at the time the notice is reported to the Insurer. Coverage shall then apply to such "Claim" subject to the terms an conditions of this policy, except that the Retention Amount and Coinsurance percentage described in Clause 6 of this policy shall be modified as follows: (1) The Retention Amount set forth in Item 4A of the Declarations shall not be applicable, (2) the Retention Amount set forth in Item 4B shall apply, but it shall be equal to 400% of the amount set forth in Item 4B of the Declarations and (3) the Coinsurance percentage set forth in Item 4A of the Declarations shall apply.

If the Insurer determines that it lacks sufficient information to make a decision as to coverage, the Insured shall have no recourse under this policy against the Insurer until the Insurer determines that sufficient information has been provided or until an actual Claim has been filed under this policy.

The term Non-discretionary Investment shall mean an investment or transaction made at the specific direction or approval of the customer or client and in no event shall include any decision made pursuant to discretionary authority granted to an Insured even if such authority is subject to investment guidelines or general

investment parameters or instructions.

Nothing in this policy shall be construed to compel the Insureds from requesting coverage under this clause.

## 20. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 21. SERVICE OF SUIT

Subject to Clause 17 "ALTERNATIVE DISPUTE RESOLUTION PROCESS", it is agreed that in the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsil, Legal Department, American International Specialty Lines Insurance Company, c/o American International Surplus Lines Agency, Inc., 70 Pine Street, New York, N.Y. 10270, or his or her representative, and that in any suit instituted against the Insurer upon this contract, the Insurer will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

*Elizabeth M. Tuck*

**SECRETARY**

**PRESIDENT**

**ENDORSEMENT#** *1*

This endorsement, effective *12:01 AM*    *January 1, 2007*    forms a part of
policy number    *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

### TIE-IN OF LIMITS

In consideration of the premium charged, it is hereby understood and agreed that the combined **Limit of Liability** of the Insurer for all **Claims** both under this policy's **Limit of Liability**, as set forth in the Declarations of this policy, and also under the following policies:

1.    Policy No. 965-88-84 issued to HUNTINGTON BANCSHARES, INC.
      by National Union Fire Insurance Company of Pittsburgh, Pa.;

2.    Policy No. 965-87-63 issued to HUNTINGTON BANCSHARES, INC.
      by National Union Fire Insurance Company of Pittsburgh, Pa.;

3.    Policy No. 965-88-25 issued to HUNTINGTON BANCSHARES, INC.
      by National Union Fire Insurance Company of Pittsburgh, Pa.;

4.    Policy No. 965-87-31 issued to HUNTINGTON BANCSHARES, INC.
      by National Union Fire Insurance Company of Pittsburgh, Pa.;

5.    Policy No. 965-87-33 issued to HUNTINGTON BANCSHARES, INC.
      by National Union Fire Insurance Company of Pittsburgh, Pa.;

(or any renewal or replacement of such policy(ies) or which succeeds such policy(ies) in time) (herein referred to as " **Other AIG Policy**"), shall be $15,000,000.

Accordingly, the Limit **of Liability** for **Loss** under this policy shall be reduced by **Loss** incurred under the **Other AIG Policy** because the **Limit of Liability** under the **Other AIG Policy** is now part of and not in addition to the **Limit of Liability** of this policy as set forth in the Declarations of this policy.

Finally, nothing in this endorsement shall be construed to increase the **Insurer's Limit of Liability** set forth in the Declarations of such **Other AIG Policy** which shall remain the maximum liability of the **Insurer** for all **Claims** under such **Other AIG Policy**, or the **Insurer's Limit of Liability** under this policy as set forth in the Declarations of this policy which shall remain the maximum liability of the **Insurer** for all **Loss** in the aggregate under this policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

*END 1*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *2*

This endorsement, effective *12:01 AM*  *January 1, 2007*  forms a part of
policy number  *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by  *American International Specialty Lines Insurance Company*

### INSURANCE AGENT/BROKER AGENT ENDORSEMENT (MODIFIED)

In consideration of the premium charged, it is hereby understood and agreed that, the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

A)  arising out of, alleging, or in any way involving, directly or indirectly, the insolvency, receivership, bankruptcy, liquidation or financial inability to pay of any Insurance Company. Provided, however, this exclusion shall not apply to claims based upon, arising out of, due to or involving, directly or indirectly, the insolvency, receivership, bankruptcy, liquidation, or financial inability to pay of, or suspension of payment by, any insurance company rated A- or better as per A.M. Best Ratings as of the time of placement of such;

B)  arising out of, alleging, or in any way involving, directly or indirectly, the commingling of funds or accounts, nor to any Claim for sums received by any Insured or credited to any Insured's account, nor to any Claim for fees, premiums, taxes, commissions or brokerage monies;

C) (1) brought by or on behalf of any insurance company or its successors or assigns arising out of such business for which any Insured was a Managing General Agent of such insurance company;

(2) for any benefits due or alleged to have been due under any insurance contract or from any benefit plan. This exclusion shall not apply to defense costs nor that portion of any settlement or judgment which does not constitute a benefit due under any insurance contract or from any benefit plan;

(3) arising out of, alleging, or in any way involving, directly or indirectly, a failure to effect and/or maintain in effect any reinsurance, provided however this exclusion shall not apply to covered Defense Costs incurred in connection with a Claim alleging a Wrongful Act;

(4) arising out of, alleging, or in any way involving, in fact any Wrongful Act, involving premium finance activities, provided however this exclusion shall not apply to covered Defense Costs incurred in connection with a Claim alleging a Wrongful Act;

*END 2*

## ENDORSEMENT# *2* (Continued)

This endorsement, effective *12:01 AM* *January 1, 2007* forms a part of policy number *965-90-89* issued to *HUNTINGTON BANCSHARES, INC.*

by *American International Specialty Lines Insurance Company*

D) arising out of or connected with the performance or failure to perform services for any person or entity:

    1.    which is owned by or controlled by any Insured, or

    2.    which owns or controls any Insured; or

    3.    which is affiliated with any Insured through any common ownership or control; or,

    4.    in which any Insured is a director, officer, partner, or principal stockholder

provided however, this exclusion D) shall not apply to any Claim brought in the capacity of a customer or client of the Named Insured.

E) arising directly or indirectly out of any actual or alleged discharge, dispersal, release, escape, or use of asbestos, toxic substances or pollutants, including but not limited to any failure to effect and maintain insurance or bond with respect thereto;

F) alleging discrimination;

As used herein, "Managing General Agent" means one who acts as an agent of an insurance company and whose authority goes beyond those of an ordinary insurance agent to include authority to manage all or part of the insurance business of such insurance company. Such authority may include, but is not limited to, the management of a separate division, department or underwriting office, sub-line or class of business, whether or not limited geographically, whether or not having authority to appoint sub-agents or accept sub-production business, and whether or not having authority to cede or assume reinsurance on behalf of such insurance company.

In this endorsement, "Insurance Company" means insurers existing in any form, e.g. stock, mutual, Lloyd's, etc.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN UNCHANGED.

*END 2*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

### ENDORSEMENT# *3*

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

### SECURITIES BROKER / DEALER ENDORSEMENT (MODIFIED 8-31-07)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

a)     arising out of any actual or alleged performance or failure to perform services for any Insured or for any parent, affiliate or subsidiary or any Insured, unless bringing suit as a customer;

b)     arising out of any function of any Insured as a specialist or market maker for any securities or arising out of failing to make a market for any securities;

c)     brought by or on behalf of any clearing agent or clearing agency; or alleging, arising out of, based upon or attributable to any function of any Insured as a clearing agency.

d)     alleging, arising out of, based upon or attributable to any bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment or refusal or inability to pay or perform Professional Services by any broker or dealer in securities or commodities, clearing agency, or any bank or banking firm, or any insurance or reinsurance entity or any Insured; provided, however, this exclusion will not apply to Wrongful Acts solely in connection with any Insured's investment on the behalf of the claimant in the stock of any of the foregoing entities;

e)     alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith:

    1)     commodities, futures contracts, forwards contracts, derivatives or any type of option or futures contract, or any similar investment or investment product;

    2)     any collectible, including but not limited to stamps, art, cards, jewelry, antiques or any other tangible personal property; or

    4)     any security in any market outside of the United States of America and its territories and possessions and Canada; or

    5)     annuities used in connection with any structured settlement; or

*END 3*

**ENDORSEMENT#** *3*      **(Continued)**

This endorsement, effective *12:01 AM*      *January 1, 2007*      forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

   6)   promissory notes, i.e. an investment whereby the maker agrees to pay to the
        payee a specific sum of money either on demand or at fixed or determinable
        future date; or

   7)   viatical products including viatical settlement and viatical contracts; or

   8)   callable certificates of deposit; or

   9)   leases (including but not limited to ETS Pay Phones)

f)   alleging, arising out of, based upon or attributable to rendering of or failure to render
     any of the following services or activities:

        (i)    accounting; provided, however, this exclusion shall not apply to fund
               accounting services provided by Unified Fund Services and Unified
               Financial Securities for Wrongful Acts committed or allegedly
               committed after the effective time that Unified Fund Services and
               Unified Financial Securities became a Subsidiary and prior to the time
               that Unified Fund Services and Unified Financial Securities ceased to
               be a Subsidiary,

        (ii)   transfer agent; provided, however, this exclusion shall not apply to
               transfer agent services provided by Unified Fund Services and Unified
               Financial Securities for Wrongful Acts committed or allegedly
               committed after the effective time that Unified Fund Services and
               Unified Financial Securities became a Subsidiary and prior to the time
               that Unified Fund Services and Unified Financial Securities ceased to
               be a Subsidiary,

        (iii)  actuarial,

        (ii)   legal,

        (iii)  real estate agent or broker, or

        (iv)   tax preparation or appearing before the Internal Revenue Service as
               an enrolled agent;

*END 3*

**ENDORSEMENT# *3***     **(Continued)**

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

g)     for any actual or alleged Wrongful Act in rendering or failure to render Professional Services to any securities broker/dealer; however this exclusion shall not apply if the Professional Service is solely the purchase or sale of securities to such broker/dealer for its own account;

h)     alleging, arising out of, based upon or attributable to any liability assumed by the Insured under any indemnification contract or agreement, either oral or in writing; however, this exclusion does not apply to liability that would exist in the absence of such contract or agreement;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 3*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *4*

This endorsement, effective  *12:01 AM*      *January 1, 2007*        forms a part of
policy number   *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by       *American International Specialty Lines Insurance Company*

### INVESTMENT ADVISORY SERVICES ENDORSEMENT

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against the Insured arising out of, based upon or attributable to:

1.    the payment to the "Executive Insured" of any remuneration without the previous approval of the shareholders of the Company, which payment without such previous approval shall be held to have been illegal. For purposes of this endorsement "Executive Insured" means an individual insured who is a past, present or future partner, officer, director or trustee of the Company or the covered funds against whom claim is made in his capacity as such partner, officer, director or trustee.

2.    profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law;

3.    disputes involving fees or charges for any Insured's services, including but not limited to any fees or charges pursuant to a 12b-1 plan of distribution adopted by a fund pursuant to Rule 12b-1; however, if the dispute is resolved by settlement consented to by the Insurer, or if such allegations are subsequently disproven by a final adjudication favorable to the Insured, then the Insurer shall reimburse the Insured for all reasonable Defense Costs which would have been collectible under this policy;

4.    any actual or alleged act or omission by, or arising out of the status of, an Insured in his/her capacity as a partner, officer, director, trustee or employee of any other person or entity other than the Named Insured;

5.    with respect to any particular fund or portfolio of funds, any actual or alleged Wrongful Act occurring prior to the date the registration statement pertaining thereto was declared effective by the Securities Exchange Commission;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

*END 4*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

## ENDORSEMENT# *5*

This endorsement, effective *12:01 AM*    *January 1 , 2007*        forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

### LOAN SERVICING ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Insurer shall not be liable to reimburse the Insureds for damages in connection with any Claim arising out of, alleging, or in any way involving, directly or indirectly:

1.      any actual or alleged inability or failure to pay, collect or safeguard funds;

2.      any defective title or deed;

3.      the failure of any real or personal property to have at any point or points in time any projected, estimated, represented, warranted or guaranteed economic value;

4.      i)      any loans that are owned (not sold to any investor) for more than 12 months.
        Mortgages held in the name of the Insured under mortgage-backed security pools shall be deemed to be sold to an investor, ii) any transaction in which any Insured has a financial interest as a buyer or seller of real property;

5.      any willful or intentional non-compliance with any statute or regulation;

6.      the performance or failure to perform services for any person or entity;

        (1) which is owned by or controlled by any Insured; or,

        (2) which owns or controls any Insured; or,

        (3) which is affiliated with any Insured through any common ownership or control; or,

        (4) in which any Insured is a director, officer, partner or principal stockholder.

7.      claims under federal or state law I) arising out of or relating to the filing of a Registration Statement with the United States Securities and Exchange Commission, or the offer or sale by means of a prospectus of any security with respect to which a registration statement has been filed, including, but not limited

*END 5*

**ENDORSEMENT#** *5* **(Continued)**

This endorsement, effective *12:01 AM* *January 1, 2007* forms a part of
policy number *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by *American International Specialty Lines Insurance Company*

to, any claim asserting that such registration statement or prospectus contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading or ii) arising out of or related to any underwriting agreement for the offer or sale or any security;

All other terms and conditions of the policy remain unchanged.

*END 5*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 6

This endorsement, effective  *12:01 AM*      *January 1, 2007*       forms a part of
policy number    *965-90-89*
Issued to     *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

### COMPANY SPONSORED FUND ENDORSEMENT

In consideration of the premium charged, it is understood and agreed as follows:

1.   Solely with respect to any Claim: (i) brought by a Fund against the Company and (ii) arising out of the rendering of investment advisory services to such Fund pursuant to a contract defining the scope of such advice and/or services and the compensation to be paid therefor; SECTION 4. EXCLUSIONS, Paragraph (f) shall not apply to any Claim by a Fund where, in the opinion of independent legal counsel selected by and at the expense of the Company (selection of such counsel being subject to approval by the Insurer, which approval shall not be unreasonably withheld), the failure to make such Claim would result in liability upon the directors, officers, or trustees of such Fund(s) for failure to assert the Claim against the Company.

2.   "Fund" means the entities listed as such below.

3.   The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured by any Fund alleging, arising out of, based upon or attributable to any Wrongful Act which occurred prior to the Continuity Date set forth below as applicable to such Fund.

| **FUND** | **Continuity Date** |
|---|---|
| 1. Huntington Bancshares Retirement Plan | 07/01/2002 |
| 2. Huntington Investment & Tax Savings Plan | 07/01/2002 |
| 3. Huntington Supplemental Stock Purchase & Tax Savings Plan & Trust | 07/01/2002 |
| 4. Huntington Bancshares Incorporated Deferred Compensation Plans I & II | 07/01/2002 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 6*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 7

This endorsement, effective  *12:01 AM*  *January 1, 2007*  forms a part of
policy number  *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by  *American International Specialty Lines Insurance Company*

### LENDER'S LIABILITY EXTENSION

In consideration of the premium charged, it is understood and agreed that exclusion (n) is deleted in its entirety.

It is further understood and agreed that Definition (f), "Loan Servicing", is deleted in its entirety. The following definitions are added to the policy:

(f) "Classified Loan" shall mean:

   (i) any loan, or transaction in the nature of a loan or extension of credit, which at the time a Claim is made, or which at any time prior to the time a Claim is made, is or has been designated as substandard, doubtful or loss by any applicable state and/or federal regulatory or supervisory agency or authority; or

   (ii) any false or genuine note, account, agreement, invoice, or other evidence of debt assigned or sold, discounted or otherwise acquired, whether or not involving the Company as lender or borrower, and whether procured in good faith or through fraud, artifice or false pretense, which at the time a Claim is made, or which at any time prior to the time a Claim is made, is or has been designated as substandard, doubtful or loss by any applicable state and/or federal regulatory or supervisory agency or authority.

(m) "Lending Act" means any act performed by an Insured for:

   (i) a customer or client of the Company relating to an extension of credit, a refusal to extend credit or an agreement to extend credit, or,

(n) "Past Due Loan" shall mean:

   (i) any loan, or any transaction in the nature of a loan or extension of credit, which at the time a Claim is made, or which at any time prior to the time a Claim is made, is or has been more than ninety (90) days delinquent in repayment according to its terms; or

### END 7

## ENDORSEMENT# 7   (Continued)

This endorsement, effective *12:01 AM*   *January 1, 2007*   forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by   *American International Specialty Lines Insurance Company*

(ii)   any false or genuine note, account, agreement, invoice, or other evidence of debt assigned or sold, discounted or otherwise acquired, whether or not involving the Company as lender or borrower, and whether procured in good faith or through fraud, artifice or false pretense, which at the time a Claim is made, or which at any time prior to the time a Claim is made, is or has been more than ninety (90) days delinquent in repayment according to its terms.

The following exclusions shall only apply with respect to any Insured's performance of Lending Acts.

The Insurer shall not be liable to make any payment for Loss in connection with any Claim or Claims made against any Insured:

for the principal and/or interest of any unpaid, unrecoverable or outstanding credit; provided, however, this exclusion shall not apply to such principal and/or interest if:

1.   the Insured is legally accountable for a borrower's financial losses relating, directly or indirectly, to actions taken by the Insured with respect to such extension of credit ("lender liability"); and

2.   principal and/or interest is part of the overall damages awarded to the borrower.

arising out of, alleging or in any way involving, directly or indirectly any extension of credit which was, at the time of its making, in excess of the legal lending limit of the Company; however, this exclusion shall not apply to Claims which fail to allege that damages were incurred as a direct result of the Company's conduct of exceeding its legal lending limit;

arising out of, alleging or in any way involving, directly or indirectly, any in fact willful violation of laws or regulations relating to extensions or denials of credit, including, but not limited to, truth-in-lending or usury laws or regulations when established through final adjudication the Insured willfully and intentionally violated such laws or regulations;

*END 7*

**ENDORSEMENT#** *7*    **(Continued)**

This endorsement, effective *12:01 AM*    *January 1, 2007*    forms a part of
policy number *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*


arising out of, alleging or in any way involving, directly or indirectly any Past Due
Loan or Classified Loan as of **01/01/2003**.

It is further understood and agreed that solely with respect to the Lender's Liability
coverage afforded by this endorsement, ITEM 3. of the Declarations is amended as
follows:

　　　　ITEM 3.　　　LIMIT OF LIABILITY: **$5,000,000**　　　aggregate for all Loss
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(including Defense Costs)


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 7*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

## ENDORSEMENT# *8*

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

### AMEND DEFINITION (g)(iv), PUNITIVE DAMAGES COVERAGE

In consideration of the premium charged, it is understood and agreed that Clause 2. DEFINITIONS (g)(iv) is deleted and replaced by the following:

(iv)     civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed; notwithstanding the foregoing, Loss shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than two (2) times the amount of compensatory damages awarded;

It is further understood and agreed that the enforceability of this endorsement shall be governed by such applicable law which most favors coverage for punitive or exemplary damages.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 8*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

### ENDORSEMENT# *9*

This endorsement, effective  *12:01 AM*   *January 1, 2007*    forms a part of
policy number  *965-90-89*
Issued to  *HUNTINGTON BANCSHARES, INC.*

by   *American International Specialty Lines Insurance Company*

#### AMEND DEFINITION (i), PROFESSIONAL SERVICES

In consideration of the premium charged, it is hereby understood and agreed that SECTION 2. DEFINITIONS (i) "Professional Services" is deleted in its entirety and replaced by the following:

(i)    "Professional Services" means those services of the Company permitted by law or regulation rendered by an Insured at any time whether before, on or after the inception date of this policy, pursuant to an agreement with the customer or client as long as such service is rendered for or on behalf of a customer or client of the Company: (i) in return for a fee, commission or other compensation ("Compensation"), or (ii) without Compensation as long as such non-compensated services are rendered in conjunction with services rendered for Compensation. Provided, however, "Professional Services" shall not include any type or kind of service(s) rendered by an Insured for the first time during the Policy Period (herein "New Service(s)").

It is further understood and agreed that in the event the Company provides New Service(s) permitted by law or regulation and rendered by an Insured pursuant to an agreement with the customer or client, then "Professional Services" shall include such New Service(s) but only upon the condition that:

(1)    such New Service(s) is rendered for or on behalf of a customer or client of the Company:

(i)    in return for Compensation, or

(ii)    without Compensation as long as such non-compensated services are rendered in conjunction with services rendered for Compensation; and

(2)    within 60 days of first rendering New Service(s) the Named Insured shall have:

(i)    notified the Insurer of such New Service(s); and

(ii)    provided the Insurer with whatever underwriting information is requested; and

*END 9*

**ENDORSEMENT# 9** **(Continued)**

This endorsement, effective *12:01 AM* *January 1, 2007* forms a part of
policy number *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by *American International Specialty Lines Insurance Company*

(iii) agreed to pay any additional premium and/or accept any modification(s) of the provisions of this policy required by the Insurer relating to such New Service(s);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 9*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *10*

This endorsement, effective *12:01 AM*    *January 1, 2007*    forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

### AMEND EXCLUSION A, B, AND C

In consideration of the premium charged, it is hereby understood and agreed that Clause 4. EXCLUSIONS (a), (b) and (c) are deleted in their entirety and replaced with the following:

(a)    arising out of or resulting, directly or indirectly, from any gaining of any profit or advantage to which any judgment, final adjudication, alternative dispute resolution proceeding, or any admission of any Insured if evidenced in a written form, establishes the Insured was not legally entitled;

(b)    arising out of or resulting, directly or indirectly, from any payments to any Insured of any remuneration without the previous approval of the stockholders or members of an Organization to which any judgment, final adjudication, alternative dispute resolution proceeding, or any admission of any Insured if evidenced in a written form, establishes that such payments without such previous approval were illegal;

(c)    arising out of or resulting, directly or indirectly, from any criminal or fraudulent act, error or omission, or any intentional or knowing violation of the law by any Insured, if any judgment, final adjudication, alternative dispute resolution proceeding, or any admission of any Insured if evidenced in a written form, establishes that such criminal or fraudulent act, error or omission occurred or any intentional or knowing violation of law was committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 10*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *11*

This endorsement, effective  *12:01 AM*     *January 1, 2007*     forms a part of
policy number  *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

### SELLING AWAY EXCLUSION

There shall be no coverage for the "Registered Representative" or the Insured for any "Security Broker Dealer Claim" based upon, arising out of, or attributable to any activity which is not an "Approved Activity".

"Security Broker Dealer Claim" shall mean any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of any Insured in the rendering or failure to render "Securities Broker/Dealer Services".

The term "Securities Broker/Dealer Services" as used in this endorsement shall mean the following services if rendered in connection with an "Approved Activity" for or on the behalf of a customer or client of the Insured pursuant to a written agreement between the Insured and the customer or client:

> (1)    purchase or sale of securities, including investment companies,
>
> (2)    purchase or sale of annuities or variable annuities,
>
> (3)    purchase or sale of life or accident and health insurance,
>
> (4)    providing brokerage services for    individual retirement accounts (IRA's), Keogh retirement plans and employee benefit plans (other than multiple employer or multi-employee welfare arrangements),
>
> (5)    services performed as a registered investment advisor but only if and to the extent such coverage is added to this policy by specific written endorsement attached hereto;
>
> and in connection with or incidental to any of the foregoing 5 activities:
>
> > i)    providing economic advice, financial advice or investment advisory services, or

*END 11*

**ENDORSEMENT# *11*** **(Continued)**

This endorsement, effective *12:01 AM*   *January 1, 2007*   forms a part of
policy number *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

> ii)    providing financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of a financial plan or personal financial statements, the giving of advice relating to personal risk management, insurance, savings, investments, retirement planning or taxes.

It is further understood and agreed that solely with respect to a Security Broker Dealer Claim, the first paragraph of Clause 8 DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS) is deleted in its entirety and replaced by the following:

> Upon receipt by the Insurer of a copy of the written approval by the Insured of the activity which forms the basis of the Securities Broker/Dealer Services alleged in any Security Broker Dealer Claim the Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of the Security Broker Dealer Claim. Such advance payments by the Insurer shall be repaid to the Insurer by the Insured, severally according to their respective interests, in the event and to the extent that the Insured shall not be entitled under the terms and conditions of this policy to payment of such Loss.

For purposes of this endorsement the following definitions shall apply:

"Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Insured which:

> 1)    has been approved in writing by the Insured to be performed by the Registered Representative, and is

> 2)    in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved in writing by the Insured to be transacted through the Registered Representative, and for which the Registered Representative has obtained all licenses required by the Insured or applicable law or regulation.

*END 11*

**ENDORSEMENT#** *11*    **(Continued)**

This endorsement, effective  *12:01 AM*    *January 1, 2007*    forms a part of
policy number  *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

"Registered Representative" means an individual who is registered with the National
Association of Securities Dealers, Inc., including a registered principal, and who for
compensation engages in the business of rendering Securities Broker/Dealer Services on
behalf of the Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 11*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *12*

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by   *American International Specialty Lines Insurance Company*

### EXCLUSION: PENDING AND PRIOR LITIGATION

In consideration of the premium charged, it is hereby understood and agreed that with respect to $15,000,000 Limit of Liability excess of $10,000,000, the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

(1)     arising out of, based upon, attributable to, or alleging any Wrongful Act occurring prior to January 1, 2000, if any Insured as of such date knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy;

(2)     arising out of, based upon, attributable to, or alleging any pending or prior litigation as of January 1, 2000, or alleging or derived from the same or essentially the same facts or the same or related Wrongful Act as alleged or contained in such pending or prior litigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 12*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *13*

This endorsement, effective  *12:01 AM*      *January 1, 2007*     forms a part of
policy number  *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

### EXCLUSION: MOLD

In consideration of the premium changed, it is understood and agreed that SECTION 4. EXCLUSIONS is amended by adding the following at the end thereof:

(u)     for or alleging bodily injury, sickness, disease, or death of any person, or damage to or destruction of any property (including the loss of use thereof), personal and advertising injury, or any other damage, loss, cost or expense, including, but not limited to damages, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.     any "Fungus(i)", "Molds(s)", mildew or yeast, or;

    b.     any "Spore(s)" or toxins created or produced by or emanating from such Fungus(i), Mold(s), mildew or yeast, or;

    c.     any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any Fungus(i) , Mold(s), mildew or yeast, or;

    d.     any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any Fungus(i), Mold(s), mildew, yeast, or Spore(s) or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that bodily injury, property damage, personal and advertising injury, loss, cost or expense.

Further, it is understood and agreed that SECTION 2. DEFINITIONS is amended by adding the following to the end thereof:

    (l)     "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including Molds, rusts, mildews, smuts, and mushrooms.

## *END 13*

**ENDORSEMENT#** *13*     **(Continued)**

This endorsement, effective  *12:01 AM*      *January 1, 2007*      forms a part of
policy number   *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

(m)   "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and Fungi that produce Molds.

(n)   "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any Fungus(i), Mold(s), mildew, plants, organisms or microorganisms.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 13*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *14*

This endorsement, effective  *12:01 AM*    *January 1, 2007*      forms a part of
policy number   *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

### EXCLUSION: IMPROPER MUTUAL FUND PRACTICES

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not make any payment for loss and/or defense costs in connection with any claim made against any Insured alleging, arising out of, based upon or attributable to any allegation(s) that any Insured intentionally or negligently permitted, or aided or abetted others in using, was aware of others using, or was a participant or connected in any way in the use of: 1) Late Trading; 2) Market Timing; 3) Soft-dollar Activity; or, 4) Front Running related to a mutual fund.

It is the intent of the parties that this policy shall exclude such loss regardless of the form, style, or denomination of any such claim, regardless of whether the claim is criminal, administrative or civil, and shall specifically apply but not be limited to claims alleging breach of contract, failure to supervise, negligent supervision or negligence of any kind, controlling person liability, breach of fiduciary duty, personal profiting, improper or unlawful fees or charges of any kind, criminal activity, market manipulation, violation of any law related to mutual funds, misrepresentation, estoppel or repudiation of any commitment and any other theory of liability.

Solely for the purpose of this endorsement, "Late Trading" means: 1) any transaction involving mutual fund shares made after the determination of the mutual fund's Current Net Asset Value (as defined in Rule 2a-4 of the Investment Company Act of 1940), including but not limited to, the placement or confirmation of orders for, or the purchase or redemption of mutual fund shares, but made at a price based on the fund's previously determined Current Net Asset Value calculated that same day, in contravention of Rule 22c-1 of the Investment Company Act of 1940; or, 2) any transaction defined as late trading by any state or federal statute or regulation, or any prospectus, policy, limitation, agreement or procedure of the mutual fund.

Solely for the purpose of this endorsement, "Market Timing" means the making of short-term purchases or sales of mutual fund shares, contrary to or in violation of any mutual fund prospectus, policy, limitation, agreement or procedure, or contrary to or in violation of any state or federal statute or regulation, and the conduct associated therewith, including, but not limited to:

(1)    the waiver of redemption fees associated with Short-Term Trading contrary to the mutual fund's prospectus, policies, limitations, agreements or procedures;

*END 14*

**ENDORSEMENT#** *14* **(Continued)**

This endorsement, effective *12:01 AM* *January 1, 2007* forms a part of
policy number *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by *American International Specialty Lines Insurance Company*

   (2)   the failure to abide by written representations regarding the permissibility of Short-Term Trading, or written representations regarding the mutual fund's efforts to monitor or prevent Short-Term Trading;

   (3)   the receipt of fees or other compensation from certain investors in exchange for providing such investors with Short-Term Trading privileges not available to other investors;

   (4)   the failure to monitor, detect, identify or remediate Short-Term Trading.

Solely for the purpose of this endorsement, "Short-Term Trading" means the redemption of shares of a mutual fund in a time period less than that provided in a mutual fund prospectus, or the policies, limitations, agreements or procedures of a mutual fund, or at law, including without limitation any so-called "in and out" trading of mutual fund shares or any other trade of mutual fund shares designed to take advantage of inefficiencies in the method the mutual fund uses to price its shares.

Solely for the purpose of this endorsement, "Soft Dollar Activities" means paying or providing, or receiving or accepting, fees, commissions, bonuses, gratuities, expenses, services or any other form of revenue or compensation in exchange for the preferential treatment of a particular mutual fund or particular class of mutual fund share.

Solely for the purpose of this endorsement, "Front Running" means the trading by anyone associated with a mutual fund of any security based on information received internally, before third parties have been given the information.

ALL OTHER TERMS, CONDITIONS, AND LIMITATIONS REMAIN UNCHANGED.

*END 14*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *15*

This endorsement, effective *12:01 AM*    *January 1, 2007*    forms a part of
policy number   *965-90-89*
Issued to    *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

### EXCLUSION: SPECIFIC MATTERS

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of Clause 4. EXCLUSIONS (d) or (e) of the policy, the Insurer shall not be liable to make any payment for Loss in connection with: (i) any of the Claim(s), notices, events, investigations or actions referred to in item (1) below; (hereinafter " Event"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any Event; or (b) any Claim(s) arising from any Event; or (iii) any Wrongful Act, underlying facts, circumstances, acts or omissions in any way relating to any Event.

#### EVENT

(1)    Securities and Exchange Commission Investigation into the 2001 and 2002 fiscal year financial statements

It is further understood and agreed that the Insurer shall not be liable for any Loss in connection with:

(A)    any restatement, retraction, amendment or revision of in part or in whole:

   (i)    any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports); or

   (ii)    any written or oral statement made regarding the assets, revenues, sales or financial condition of the Company;

   resulting from, arising out, based upon or attributable to any Event or the resolution of said Event; and

(B)    any Claim alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an Interrelated Wrongful Act (as that term is defined below), regardless of whether or not such Claim involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

*END 15*

**ENDORSEMENT# *15*** **(Continued)**

This endorsement, effective *12:01 AM* *January 1, 2007* forms a part of
policy number *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by *American International Specialty Lines Insurance Company*

For the purposes of this endorsement an " Interrelated Wrongful Act" means: (i) any fact, circumstance, act or omission alleged in any Event and/or (ii) any Wrongful Act which is the same as, similar or related to or a repetition of any Wrongful Act alleged in any Event.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

*END 15*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *16*

This endorsement, effective *12:01 AM*      *January 1, 2007*      forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

### EXCLUSION: FEE ARRANGEMENT

In consideration of the premium charged, it is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to any allegations that any Insured intentionally or negligently permitted, or aided or abetted others in using, was aware of others using, or was a participant or connected in any way in the use of an illegal or improper agreement or other arrangement between an insurance broker and an insurance carrier involving the payment of increased fees, commissions or other compensation based on the volume or type of business referred to the insurance carrier.

It is the intent of the parties that this policy shall exclude such loss regardless of the form, style, or denomination of any such claim, regardless of whether the claim is criminal, administrative or civil, and shall specifically apply but not be limited to claims alleging conflict of interest, breach of contract, failure to supervise, negligent supervision or negligence of any contract, controlling person liability, breach of fiduciary duty, personal profiting, improper or unlawful fees or charges of any kind, criminal activity, market manipulation, violation of any law related to the insurance industry, misrepresentation, estoppel or repudiation of any commitment and any other theory of liability.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 16*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

**ENDORSEMENT# *17***

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to     *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

## AMEND CLAUSE 8, DEFENSE COSTS, SETTLEMENT AND JUDGMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 8. Defense Costs, Settlements and Judgments (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS), will be amended by deleting the last paragraph thereof and replacing it with the following:

The Insurer may make any settlement of any Claim it deems expedient with respect to any Insured subject to such Insured's written consent. If any Insured withholds consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer ("Settlement Opportunity Amount"), plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

*END 17*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *18*

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number  *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

### AMEND CLAUSE 9, ACQUISITION OR DISPOSITION OF ASSETS

In consideration of the premium charged, it is hereby understood and agreed that Clause 9. ACQUISITION OR DISPOSITION OF ASSETS is hereby amended by deleting subparagraphs (a) and (b) in their entirety and replacing them with the following:

(a)     automatically in the case where such acquired assets total less than $5,000,000,000 as of the date such organization is acquired. The Named Insured shall provide the Insurer with full particulars of the new assets before the end of the Policy Period;

(b)     in the case where such acquired assets total more than $5,000,000,000 as of the date such organization is acquired, but only upon the condition that within 90 days of the acquisition, the Named Insured shall have provided the Insurer with full particulars of the new assets and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new assets. Further, coverage as shall be afforded to the new assets is conditioned upon the Named Insured paying when due any additional premium required by the Insurer relating to such new assets.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 18*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

### ENDORSEMENT# *19*

This endorsement, effective  *12:01 AM*     *January 1, 2007*     forms a part of
policy number  *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

### AMEND CLAUSE 10, DISCOVERY CLAUSE

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

Clause 10. DISCOVERY CLAUSE is hereby deleted in its entirety and replaced with the following:

#### 10. DISCOVERY CLAUSE

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right upon payment of an Additional Premium of TBD% of the Full Annual Premium, to a period of one year following the effective date of such cancellation or nonrenewal (the " Discovery Period"), in which to give to the Insurer written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) Claims first made against an Insured; and (ii) circumstances of which an Organization or an Insured shall become aware, in either case during said Discovery Period and solely with respect to a Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. As used herein, " Full Annual Premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction as defined in Clause 12(a) or (b), the Named Entity shall have the right to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction). The Insurer shall offer such Discovery Period pursuant to such terms, conditions, exclusions and additional premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a Discovery Period together

*END 19*

## ENDORSEMENT# *19* (Continued)

This endorsement, effective *12:01 AM*  *January 1, 2007*  forms a part of
policy number  *965-90-89*
issued to  *HUNTINGTON BANCSHARES, INC.*

by  *American International Specialty Lines Insurance Company*

with any additional premium due is received by the Insurer no later than ninety
(90) days subsequent to the effective date of the cancellation, nonrenewal or
Transaction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 19*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# *20*

This endorsement, effective  *12:01 AM*    *January 1, 2007*    forms a part of
policy number   *965-90-89*
issued to   *HUNTINGTON BANCSHARES, INC.*

by    *American International Specialty Lines Insurance Company*

### AMEND CLAUSE 11, CANCELLATION CLAUSE

In consideration of the premium charged, it is understood and agreed that CLAUSE 11.
CANCELLATION CLAUSE is amended by adding the following paragraph at the end
thereof:

#### NON-RENEWAL

This policy may be non-renewed by the Insurer by delivering to the Named Insured
or mailing written notice to the Named Insured , at the Named Insured's mailing
address as shown in Item 1 of the Declarations, at least ninety (90) days before the
expiration date of the Policy Period as shown in Item 2 of the Declarations. The
mailing of such notice as aforesaid shall be sufficient proof of notice. The date of
non-renewal stated in the notice shall be the date and time of expiration date of the
Policy Period as stated in Item 2 of the Declarations. The Insurer, it its absolute and
sole discretion, may offer to extend the Policy Period and the aggregate Limit of
Liability in order to afford the Insured with such sixty (60) day or greater notice
period. Such extension, if offered, shall only be afforded if accepted by the Named
Insured and all premium for such extension has been paid within fifteen (15) days
following the date of such offer.

It is further understood and agreed that if, upon renewal, the Insurer should propose
terms, conditions or exclusions different from the expiring terms, conditions and
exclusions of this policy then in no event shall such proposal serve to constitute
non-renewal or be considered an act of non-renewal.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 20*

**AUTHORIZED REPRESENTATIVE**
Or Countersignature (in states where applicable)

## ENDORSEMENT# *21*

This endorsement, effective  *12:01 AM*      *January 1, 2007*        forms a part of
policy number   *965-90-89*
issued to    *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

## AMEND CLAUSE 19, COST OF CORRECTIONS

In consideration of the premium charged, it is hereby understood and agreed that Clause 19, Cost of Corrections, will be amended by replacing the second paragraph, section (2), with the following:

(2)      the Retention Amount set forth in Item 4B shall apply, but it shall be equal to 250% of the amount set forth in Item 4B of the Declarations and

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 21*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

**ENDORSEMENT#** *22*

This endorsement, effective *12:01 AM*     *January 1, 2007*     forms a part of
policy number   *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

**AUTHORIZED REPRESENTATIVE**
**Or Countersignature (in states where applicable)**

*END 022*

89644 (7/05)                          Page 1 of 1

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 AM      January 1, 2007*          forms a part of
policy number   *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by      *American International Specialty Lines Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 68017 | | BPL Broad AISLIC DEC |
| 68018 | 01/97 | BPL Broad AISLIC GUTS |
| MNSCPT | | TIE-IN OF LIMITS |
| MNSCPT | | INSURANCE AGENT/BROKER AGENT ENDORSEMENT |
| MNSCPT | | SECURITIES BROKER / DEALER ENDORSEMENT |
| MNSCPT | | INVESTMENT ADVISORY SERVICES ENDORSEMENT |
| MNSCPT | | LOAN SERVICING ENDORSEMENT |
| MNSCPT | | COMPANY SPONSORED FUND ENDORSEMENT |
| MNSCPT | | LENDER'S LIABILITY EXTENSION |
| MNSCPT | | AMEND DEFINITION (g)(iv), PUNITIVE DAMAGES COVERAGE |
| MNSCPT | | AMEND DEFINITION (i), PROFESSIONAL SERVICES |
| MNSCPT | | AMEND EXCLUSION A, B, AND C |
| MNSCPT | | SELLING AWAY EXCLUSION |
| MNSCPT | | EXCLUSION: PENDING AND PRIOR LITIGATION |
| MNSCPT | | EXCLUSION: MOLD |
| MNSCPT | | EXCLUSION: IMPROPER MUTUAL FUND PRACTICES |
| MNSCPT | | EXCLUSION: SPECIFIC MATTERS |
| MNSCPT | | EXCLUSION: FEE ARRANGEMENT |
| MNSCPT | | AMEND CLAUSE 8, DEFENSE COSTS, SETTLEMENT AND JUDGMENTS |
| MNSCPT | | AMEND CLAUSE 9, ACQUISITION OR DISPOSITION OF ASSETS |
| MNSCPT | | AMEND CLAUSE 10, DISCOVERY CLAUSE |
| MNSCPT | | AMEND CLAUSE 11, CANCELLATION CLAUSE |
| MNSCPT | | AMEND CLAUSE 19, COST OF CORRECTIONS |

*END 023*

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 AM*  *January 1, 2007*  forms a part of
policy number  *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by  *American International Specialty Lines Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

*END 023*

## ENDORSEMENT# *24*

**This endorsement, effective** *12:01 AM*     *January 1, 2008*     forms a part of
**policy number** *965-90-89*
**issued to** *HUNTINGTON BANCSHARES, INC.*

**by**     *American International Specialty Lines Insurance Company*

### POLICY PERIOD EXPANDED

In consideration of the additional premium of **$253,933** (pro rata amount of the annual premium), it is hereby understood and agreed that the Item on the Declarations entitled POLICY PERIOD is deleted in its entirety and replaced with the following:

**POLICY PERIOD:**     FROM: January 1, 2007     TO: January 1, 2009
12:01 A.M. standard time at the address stated in Item 1(a) of the Declarations.

It is further understood and agreed that the **Limit of Liability** for the expanded **Policy Period** shall be part of and not in addition to the **Limit of Liability** stated in the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*COPY*

*END 24*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

**ENDORSEMENT# 25**

This endorsement, effective *12:01 AM*     *January 1, 2007*          forms a part of
policy number     *965-90-89*
issued to *HUNTINGTON BANCSHARES, INC.*

by     *American International Specialty Lines Insurance Company*

**FORMS INDEX (AMENDED)**

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|-----------|
| MNSCPT | | POLICY PERIOD EXPANDED |
| PENMAN | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**AUTHORIZED REPRESENTATIVE**
**Or Countersignature (in states where applicable)**

*COPY*

**END 025**

(1/05)                              Page 1 of 1

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

VOLS

# ACORD™ COMMERCIAL POLICY CHANGE REQUEST

DATE (MM/DD/YYYY)
06/29/2007

| PRODUCER | PHONE (A/C, No, Ext): (614) 228-5565 | | POLICY TYPE | PROPERTY | | X | GENERAL LIABILITY | | |
|---|---|---|---|---|---|---|---|---|---|
| | FAX (A/C, No): (614) 228-6985 | | | INLAND MARINE | | | AUTO/TRUCKERS | | |
| Fargo Insurance Services of Ohio, LLC | | | | UMBRELLA | | | WORKERS COMP | | |

J. 4th Street, Suite 400
Columbus, OH 43215-2153

| COMPANY | NAIC CODE: |
|---|---|
| American International Specialty Lines Ins Co | |

| CODE: | SUBCODE: |
|---|---|
| AGENCY CUSTOMER ID HUNTBAN-02 | ATTENTION: |

| INSURED'S NAME | POLICY NUMBER | EFFECTIVE DATE OF CHANGE |
|---|---|---|
| Huntington Bancshares Inc | 9659089 | 7/1/2007 |

| INSURED'S MAILING ADDRESS IF CHANGED (INC ZIP+4) | POLICY INCEPTION DATE | POLICY EXPIRATION DATE |
|---|---|---|
| | 1/1/2007 | 1/1/2008 |

THIS IS AN ACKNOWLEDGEMENT OF YOUR REQUEST. UPON APPROVAL, THE COMPANY'S RECORDS WILL BE ADJUSTED ACCORDINGLY, AND IF A PREMIUM ADJUSTMENT IS REQUIRED, IT WILL BE DONE AT PREMIUM AUDIT OR BY ENDORSEMENT.

## PREMISES INFORMATION
ADD ☐ CHANGE ☐ DELETE ☐

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | PART OCCUPIED |
|---|---|---|---|---|---|---|
| | | | INSIDE | OWNER | | |
| | | | OUTSIDE | TENANT | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)
ADD ☐ CHANGE ☐ DELETE ☐

| LOC # | BLD # | |
|---|---|---|
| | | |

## AUTO-VEHICLE DESCRIPTION/LIMITS
POLICY LIMIT(S) CHANGED ADD ☐ CHANGE ☐ DELETE ☐

| VEH # | YEAR | MAKE: | | BODY TYPE: | | | | VEHICLE TYPE | | | SYM/AGE | COST NEW |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MODEL: | | V.I.N.: | | | | PP | SPEC | COML | | $ |

| CITY, STATE, ZIP WHERE GARAGED | | LIC STATE | TERR | GVW/GCW | | CLASS | | SIC | FACTOR | SEAT CP | RADIUS | FARTHEST TERM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| DRIVE TO WORK/SCHOOL | USE | COMM'L | CHECK COVERAGES | ADD'L NO-FAULT | UNDRINS MOTOR | F | LSP | DEDUCTIBLES | | ACV | COMP | SPEC C OF L | NET VEH DR/CR: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| < 15 MILES | PLEASURE | RETAIL | LIAB | MED PAY | TOWING & LABOR | FT | COMP | AA | ST AMT | $ | | | TOTAL PREM |
| 15 MILES + | FARM | SERVICE | NO-FAULT | UNINS MOTOR | SPEC C OF L | FTW | COLL | $ | | $ | | COLL | $ |

| LIABILITY | | NO FAULT | | ADD'L NO FAULT | | MEDICAL PAYMENTS | | UNINSURED MOTORISTS | | UNDERINSURED MOTORISTS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | | $ | | $ | | $ | | $ | | $ | |

## AUTO-VEHICLE DESCRIPTION/LIMITS
POLICY LIMIT(S) CHANGED ADD ☐ CHANGE ☐ DELETE ☐

| VEH # | YEAR | MAKE: | | BODY TYPE: | | | | VEHICLE TYPE | | | SYM/AGE | COST NEW |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MODEL: | | V.I.N.: | | | | PP | SPEC | COML | | $ |

| CITY, STATE, ZIP WHERE GARAGED | | LIC STATE | TERR | GVW/GCW | | CLASS | | SIC | FACTOR | SEAT CP | RADIUS | FARTHEST TERM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| DRIVE TO WORK/SCHOOL | USE | COMM'L | CHECK COVERAGES | ADD'L NO-FAULT | UNDRINS MOTOR | F | LSP | DEDUCTIBLES | | ACV | COMP | SPEC C OF L | NET VEH DR/CR: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| < 15 MILES | PLEASURE | RETAIL | LIAB | MED PAY | TOWING & LABOR | FT | COMP | AA | ST AMT | $ | | | TOTAL PREM |
| 15 MILES + | FARM | SERVICE | NO-FAULT | UNINS MOTOR | SPEC C OF L | FTW | COLL | $ | | $ | | COLL | $ |

| LIABILITY | | NO FAULT | | ADD'L NO FAULT | | MEDICAL PAYMENTS | | UNINSURED MOTORISTS | | UNDERINSURED MOTORISTS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | | $ | | $ | | $ | | $ | | $ | |

## DRIVER INFORMATION (List drivers who frequently use own vehicles)
ADD ☐ CHANGE ☐ DELETE ☐

| DRIVER # | NAME (Include address, if required) | SEX | MARITAL STAT | DATE OF BIRTH | YRS EXP | YEAR LIC | DRIVERS LICENSE NUMBER/ SOCIAL SECURITY NUMBER | STATE LIC | DATE HIRE | BROADEN NO FAULT | OCC | USE VEH # | % USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |

## DRIVER INFORMATION (List drivers who frequently use own vehicles)
ADD ☐ CHANGE ☐ DELETE ☐

| DRIVER # | NAME (Include address, if required) | SEX | MARITAL STAT | DATE OF BIRTH | YRS EXP | YEAR LIC | DRIVERS LICENSE NUMBER/ SOCIAL SECURITY NUMBER | STATE LIC | DATE HIRE | BROADEN NO-FAULT | OCC | USE VEH # | % USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |

## WORKERS COMPENSATION RATING INFORMATION

| T | STATE | LOC | CLASS CODE | DESCR CODE | CATEGORIES, DUTIES, CLASSIFICATIONS | # OF EMPLOYEES FULL TIME | PART TIME | ESTIMATED ANNUAL REMUNERATION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

ACORD 175 (2001/08)    PLEASE COMPLETE REVERSE SIDE    © ACORD CORPORATION 1991

HUNTBAN-02 VOLS

## PROPERTY/INLAND MARINE - PREMISES INFORMATION

PREMISES #:    BUILDING #:    ADD ☐ CHANGE ☐ DELETE ☐

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALUATION | CAUSES OF LOSS | INFLATION GUARD % | DEDUCTIBLE | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT FT | FIRE STAT MI | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|

| BUILDING IMPROVEMENTS | PLUMBING, YR: | BLDG CODE GRADE | INSPECTED? | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|---|
| WIRING, YR: | HEATING, YR: | | YES ☐ NO ☐ | | |
| ROOFING, YR: | OTHER: | TAX CODE | | | |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | EXTENT | GRADE | CENTRAL STATION WITH KEYS |
|---|---|---|---|---|---|

| BURGLAR ALARM INSTALLED AND SERVICED BY | | # GUARDS/WATCHMEN | CLOCK HOURLY |
|---|---|---|---|

| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO₂/Chemical Systems) | FIRE ALARM MANUFACTURER | CENTRAL STATION LOCAL GONG |
|---|---|---|

## INLAND MARINE - SCHEDULED EQUIPMENT

% COINSURANCE:    ADD ☐ CHANGE ☐ DELETE ☐

| # | MODEL YEAR | DESCRIPTION (TYPE, MANUFACTURER, MODEL, CAPACITY, ETC) | ID #/SERIAL # | DATE PURCHASED | NEW/USED | AMOUNT OF INSURANCE |
|---|---|---|---|---|---|---|
| | | | | | | $ |
| | | | | | | $ |

## GENERAL LIABILITY - LIMITS

CHANGE ☐

| GENERAL AGGREGATE | $ | DAMAGE TO RENTED REMISES | $ |
|---|---|---|---|
| PRODUCTS & COMPLETED OPERATIONS AGGREGATE | $ | MEDICAL EXPENSE (Any one person) | $ |
| ĪAL & ADVERTISING INJURY | $ | EMPLOYEE BENEFITS | $ |
| EACH OCCURRENCE | $ | | $ |

## GENERAL LIABILITY - SCHEDULE OF HAZARDS

| TYPE OF CHANGE | LOCATION # | CLASSIFICATION | CLASS CODE | PREMIUM BASIS | TERR | PREMIUM BASIS CODES |
|---|---|---|---|---|---|---|
| | | | | | | (S) GROSS SALES - PER $1,000/SALES |
| | | | | | | (P) PAYROLL - PER $1,000/PAY |
| | | | | | | (A) AREA - PER 1,000/SQ FT |
| | | | | | | (C) TOTAL COST - PER $1,000/COST |
| | | | | | | (M) ADMISSIONS - PER 1,000/ADM |
| | | | | | | (U) UNIT - PER UNIT |
| | | | | | | (T) OTHER |

## UMBRELLA

CHANGE ☐

| LIMIT OF LIABILITY | $ | OTHER (DESCRIBE) | |
|---|---|---|---|
| RETAINED LIMIT | $ | | |

## ADDITIONAL INTEREST

ADD ☐ CHANGE ☐ DELETE ☐

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|---|
| ADDITIONAL INSURED | | | | | | PREMISES:   BUILDING: |
| LOSS PAYEE | | | | | | VEHICLE:   BOAT: |
| MORTGAGEE (#____) | | | | | | SCHEDULED ITEM NUMBER: |
| MORTGAGEE (#____) | | | | | | OTHER |
| LIENHOLDER | | | | | | |
| EMPLOYEE AS LESSOR | ITEM DESCRIPTION: | | | | | |

## ADDITIONAL CHANGES/REMARKS

$15 Primary-AIG-Professional Liability
Adding Sky Bank effective 7/1/2007

SIGNATURE (Any deletion or reduction in coverage requires the Insured's signature)

| INSURED'S SIGNATURE | PRODUCER'S SIGNATURE | Donna M. Wilson |
|---|---|---|

ACORD 175 (2001/08)