POLICY NUMBER: 966-37-95
RENEWAL OF:     N/A

 **AMERICAN INTERNATIONAL COMPANIES®**

☐ AIU Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Pennsylvania
☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pittsburgh, Pa.
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

## EXCESS INSURANCE POLICY

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

## DECLARATIONS

ITEM 1.    NAMED INSURED:    HUNTINGTON BANCSHARES, INC.

           MAILING ADDRESS:  41 SOUTH HIGH STREET
                             COLUMBUS, OH 43215

           STATE OF INCORPORATION/FORMATION OF THE NAMED INSURED:   Delaware

ITEM 2(a). FOLLOWED POLICY shall be the following:

           INSURER:     National Union Fire Insurance Company
           POLICY NO.:  965-87-63

      (b). FOLLOWED POLICY SECTION
           This policy shall follow the terms and conditions of the following coverage sections of the Followed Policy only:

           COVERAGE SECTION                                    FORM NUMBER

           All Sections                                        75011 (02/00)

Exhibit B

74674 (11/99)                              1

ITEM 3. POLICY PERIOD: From: **January 1, 2007** To **January 1, 2008**
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4(a). LIMIT OF LIABILITY: **$10,000,000** aggregate for all coverages and all Insured(s) afforded coverage under this policy combined and excess of Total Underlying Limits in Item 4(b) (including Defense Costs).

4(b). TOTAL UNDERLYING LIMITS: **$30,000,000**

ITEM 5. SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

| | Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| Primary Policy: | National Union Fire Insurance Company | 965-87-63 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| | National Union Fire Insurance Company | 965-88-25 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| | American International Specialty Lines Insurance Company | 965-90-89 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| | National Union Fire Insurance Company | 965-88-84 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| | National Union Fire Insurance Company | 965-87-33 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| | National Union Fire Insurance Company | 965-87-31 | $15,000,000 | 01/01/2007 to 01/01/2008 |
| Underlying Excess Policy: | St. Paul Travelers | 576CM0665 | $15,000,000 xs $15,000,000 | 01/01/2007 to 01/01/2008 |
| | St. Paul Travelers | 476BD0440 | $15,000,000 xs $15,000,000 | 01/01/2007 to 01/01/2008 |
| | St. Paul Travelers | 476BD0441 | $15,000,000 xs $15,000,000 | 01/01/2007 to 01/01/2008 |

ITEM 6.    **PREMIUM:**    $312,500

Premium for Certified Acts of Terrorism Coverage under the Terrorism Risk Insurance Act of 2002: $3,094 included in policy premium.
Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA losses") may be partially reimbursed by the United States of America under a formula established by TRIA as follows: 90% of TRIA losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism. A copy of the TRIA disclosure sent with the original quote is attached hereto.

ITEM 7.    NAME AND ADDRESS OF INSURER ("Insurer")

National Union Fire Insurance Company of Pittsburgh, Pa.
175 Water Street
New York, NY 10038

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

*Elizabeth M. Tuck*

———————————————
SECRETARY

———————————————
PRESIDENT

ACORDIA OF OHIO LLC
580 N 4th ST #400
COLUMBUS, OH 43215-2153

———————————————
AUTHORIZED REPRESENTATIVE

———————————————
COUNTERSIGNATURE DATE

———————————————
COUNTERSIGNED AT

74674 (11/99)              3

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *HUNTINGTON BANCSHARES, INC.*

Policy Number: *966-37-95*
Policy Period Effective Date From: *January 1, 2007*     To: *January 1, 2008*

81285 (1/03)

AIG AMERICAN INTERNATIONAL COMPANIES®

## EXCESS INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the Insurer, agrees as follows:

### I. INSURING AGREEMENTS

This policy shall provide the Insureds and the Company with coverage in accordance with the same terms, conditions, exclusions and limitations of the Followed Policy as listed in Item 2 of the Declarations as they were in existence on the inception date of this policy as described in Item 3 of the Declarations (except as regards the premium, limits of liability and the policy period) subject to:

(a) the warranties, terms, conditions, exclusions and limitations of this policy, including any endorsement attached hereto, and

(b) the provision that, notwithstanding any other provision of this policy, in no event shall this policy provide coverage broader than that provided by the Followed Policy, unless such broader coverage is specifically agreed to by the Insurer and identified as broader coverage in a written endorsement attached hereto.

### II. DEFINITIONS

**Unless otherwise indicated below, the Definitions of the Followed Policy shall have the same meaning in this policy.**

(a) "Claim", "Discovery Clause", "Insured(s)", "Loss", "Subsidiary" and "Wrongful Act" shall have the same meaning in this policy as is attributed to it in the Followed Policy.

(b) "Company" shall mean the Named Insured and any Subsidiary thereof.

(c) "Followed Policy" shall mean the policy listed in Item 2 of the Declarations.

(d) "Insurer" shall mean the entity listed in Item 7 of the Declarations.

(e) "Policy Period" shall mean the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(f) "Total Underlying Limits" shall mean the amount set forth in Item 4(b) of the Declarations, which is the aggregate sum of the limit of liability of all Underlying Policies.

(g) "Underlying Insurers" means the insurer(s) of each respective Underlying Policy.

(h) "Underlying Policy(ies)" means any policy set forth in Item 5 of the Declarations.

### III. LIMIT OF LIABILITY

The Limit of Liability stated in Item 4(a) of the Declarations is the limit of the Insurer's liability for all Loss in excess of the Total Underlying Limit, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy; however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit

of Liability for the Policy Period. Further, any Claim that is made subsequent to the Policy Period or Discovery Period (if applicable), which, pursuant to Clause V(b), is considered made during the Policy Period or Discovery Period, shall also be subject to the one aggregate Limit of Liability stated in Item 4(a). of the Declarations.

It is expressly agreed that liability for any covered Loss with respect to Claims first made against the Insureds during the Policy Period and the Discovery Period (If applicable) and reported in writing to the Insurer pursuant to the terms of this policy shall attach to the Insurer only after the Underlying Insurers and/or the Insureds or the Company shall have paid the full amount of the Total Underlying Limits, and the Company or the Insureds shall have paid the full amount of the applicable Retention amount under any Underlying Policy. In the event, and only in the event, of exhaustion of the Total Underlying Limits by reason of the Underlying Insurers and/or the Insured or the Company paying Loss covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Total Underlying Limits, and (ii) in the event of exhaustion, continue in force as primary insurance.

This policy shall "drop down" (continue in force as primary insurance) only in the event of exhaustion of the Total Underlying Limits as described above and shall not drop down for any other reason, including, but not limited to, uncollectability (in whole or in part) of any limit of liability of any Underlying Policy, existence of a sub-limit of liability in any Underlying Policy, or any Underlying Policy containing terms and conditions different from the Followed Policy.

### IV. UNDERLYING LIMITS

It is a condition of this policy that each Underlying Policy shall be maintained in full effect with solvent insurers during the Policy Period, except for any reduction or exhaustion of each Underlying Policy's respective part of the Total Underlying Limits contained therein by reason of Loss(es) paid, for which the Underlying Insurer has agreed to pay or for which the Underlying Insurer been held liable to pay under their respective Underlying Policy (as provided for in Clause III above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Insurer shall be liable only to the extent that it would have been liable had the Insureds and the Company complied with such condition.

Unless the Insurer otherwise agrees in writing, this policy shall immediately and automatically terminate if the Company fails to notify the Insurer as set forth in Clause V(c) of this policy that any Underlying Policy has ceased to be in full effect. If such notification is made, then this policy shall continue in effect, but the Company, the Insured(s) or an insurer providing replacement coverage (if such replacement coverage is obtained) shall be liable for the amount of the underlying limit of such ceased Underlying Policy, and the Insurer shall be liable only to the extent that it would have been liable had the Underlying Policy not ceased. Unless the Insurer otherwise agrees in writing, this policy shall automatically terminate 30 days following the date any Underlying Insurer becomes subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or is taken over by any regulatory authority, unless the Named Insured obtains replacement coverage for such Underlying Policy within such 30 day period. The risk of uncollectability of (in whole or in part) of any limit of liability of any Underlying Policy, whether because of financial impairment or insolvency of an Underlying Insurer, or for any other reason, is expressly retained by the Insureds and the Company and is not in any way or under any circumstances insured or assumed by the Insurer.

If, during the Policy Period or any Discovery Period (if applicable), the terms, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Company or the Insureds shall, as a condition precedent to their rights under this policy, give to the

Insurer, as soon as practicable, written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, but only upon the condition that the Insurer agrees to follow such changes by written endorsement attached hereto, and the Named Insured agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such changes. Further, such new coverage is conditioned upon the Named Insured paying, when due, any additional premium required by the Insurer relating to such changes.

## V. NOTICES AND CLAIM REPORTING PROVISIONS

(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer at the address indicated in Item 7 of the Declarations page in the same manner and to the extent permitted by the terms and conditions of the Followed Policy, of any Claim made against the Insureds.

(b) If during the Policy Period or during the Discovery Period (if applicable), (i) written notice of a Claim has been given to the Insurer pursuant to Clause V(a) above, or (ii) to the extent permitted by the terms and conditions of the Followed Policy, written notice of circumstances that might reasonably be expected to give rise to a Claim has been given to the Insurer, then any Claim that is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim or circumstances of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim or circumstances of which such notice has been given, shall be considered made at the time such Claim or circumstances has been given to the Insurer.

(c) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of the following events as soon as practicable, but in no event later than 30 days after an Insured or the Company becoming aware of the following:

  (i) The cancellation or nonrenewal of any Underlying Policy or any Underlying Policy otherwise ceasing to be in effect or any part of the Total Underlying Limits being uncollectible (in part or in whole); or

  (ii) Any Underlying Insurer becoming subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding, or being taken over by any regulatory authority.

  (iii) The Named Insured consolidating with or merging into, or selling all or substantially all of its assets to, any other person or entity or group of persons or entities acting in concert; or

  (iv) Any person or entity or group of persons or entities acting in concert acquiring an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Insured, or acquiring the voting rights of such an amount of such securities.

## VI. CLAIM PARTICIPATION

The Insurer shall have the right, in its sole discretion, but not the obligation, to associate effectively with the Company and the Insureds in the defense and settlement of any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, including, but not limited to effectively associating in the negotiation of a settlement. The Insureds shall defend and contest any such Claim. The Company and the Insureds shall give the Insurer

full cooperation and such information as it may reasonably require. The failure of the Insurer to exercise any right under this paragraph at any point in the handling of the defense and settlement of a Claim shall not act as a waiver of or limit the right of the Insurer to exercise such rights at any other point in the handling of the defense and settlement of a Claim, including the right to associate effectively in the negotiation of a settlement.

The Insurer does not assume any duty to defend any Claim, unless the terms and conditions of the Followed Policy state otherwise, and in such event only to the extent permitted or required by the terms and conditions of the Followed Policy. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs, in regard to any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs that have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to associate effectively in the defense and the negotiation of any settlement of any Claim in order to reach a decision as to reasonableness.

## VII. CANCELLATION CLAUSE

This policy may be canceled by the Named Insured by mailing prior written notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent at the address set forth in Item 7 of the Declarations and within the time period and in the manner set forth in the Followed Policy. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Insured or by mailing to the Named Insured, by registered, certified, or other first class mail, at the Named Insured's address set forth in the Declarations, written notice stating when, not less than the time period set forth in the Followed Policy (15 days for cancellation due to failure to pay premium) the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Insured, the Insurer shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## VIII. OTHER CONDITIONS

The Insurer shall be entitled to all the rights, privileges and protections afforded to the insurer of the Followed Policy in accordance with all the terms and conditions of the Followed Policy, specifically including, but not limited to, the right of subrogation, other insurance, notice and authority, assignment and action against the insurer.

## IX. PREMIUM

The premium under this policy is a flat premium and is not subject to adjustment except as otherwise provided herein.

### X. CHANGES

Notice to or knowledge possessed by any person shall not effect a waiver of or a change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

### XI. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the dispute resolution process ("ADR") set forth in this clause.

Either the Insurer and the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Insured. The Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

### XII. HEADINGS

The descriptions in the headings and any subheadings of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**ENDORSEMENT# 1**

This endorsement, effective *12:01 am    January 1, 2007*    forms a part of
policy number    *966-37-95*
issued to *HUNTINGTON BANCSHARES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OHIO CANCELLATION/NONRENEWAL ENDORSEMENT
(CLAIMS-MADE POLICIES)**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" means the insurance company that issued this policy; and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is understood and agreed that the cancellation provision of the Policy is deleted in its entirety and replaced by the following:

CANCELLATION

This policy may be cancelled by the named Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

After coverage has been in effect for more than (90) ninety days or after the effective date of the renewal of the policy, a notice of cancellation shall not be issued by the Insurer unless it is based on at least one of the following reasons:

a) Nonpayment of premium;

b) Discovery of fraud or material misrepresentation in the procurement of the insurance;

c) Discovery of willful or reckless acts or omissions on the part of the Named Insured or Other Insured(s) which increase any hazard insured against;

d) The occurrence of a change in the individual risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed, except to the extent the insurer reasonably should have foreseen the change or contemplated the risk in writing the contract;

e) Loss of or substantial decrease in applicable reinsurance (if the superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage);

f) Failure of an Insured or Other Insured(s) to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

g) A determination by the director of insurance that the continuation of the Policy would create a condition that would be hazardous to the Insured or Other Insured(s) or to the public.

The notice of cancellation will be in writing, be mailed to the Insured at the last known address, and contain all of the following:

-    The policy number;

*END 001*

75213 (10/06)    Page 1 of 2

**ENDORSEMENT# 1**   (continued)

- The date of notice;
- The effective date of cancellation (Except for nonpayment of premium, the effective date of cancellation shall not be less than (30) thirty days from the date of mailing the notice. When cancellation is for nonpayment of premium, the effective date of cancellation shall be no less than (10) ten days from the date of mailing the notice); and
- An explanation of the reason for cancellation.

In addition, the Policy is amended to include the following:

NONRENEWAL

The Insurer shall provide at least (30) thirty days written notice of its intention not to renew the policy at its expiration date.

NOTICE REQUIREMENTS FOR INCREASE IN PREMIUM

An insurer who intends to condition renewal upon a substantial increase in premium shall mail a notice of such intention to the agent of record and to the Insured at least (30) thirty days prior to the expiration date of the policy. If the notice is mailed less than (30) thirty days before the expiration date of the policy the Insured's coverage then in effect remains in effect until (30) thirty days after the date of mailing the notice.

OTHER DUTIES OF THE INSURER

The Insurer will provide the Insured the following information relating to this and any preceding claims-made Policy issued to the Insured by the Insurer during the previous three years:

1. A list or other record of each claim, not previously reported to any other insurer, of which the Insurer has been notified in accordance with the Policy terms and conditions. The Insurer will include the date and brief description of each claim if that information was in the notice the Insurer received.

2. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit.

    Amounts reserved are based on the Insurer's judgment. They are subject to change and should not be regarded as ultimate settlement values.

    The Insured (or Other Insured(s)) must not disclose this information to any claimant or any claimant's representative without the Insurer's consent.

If the Insurer cancels or elects not to renew this Policy, the above information shall be provided no later than (30) thirty days before the date of policy termination. In other circumstances, the Insurer will provide this information only if the Insurer receives a written request from the Insured within (60) sixty days after the end of the policy period. In this case, the Insurer will provide this information within (45) forty-five days of receipt of the request.

The Insurer compiles claim information for its own business purposes and exercises reasonable care in doing so. In providing this information to the Insured, the Insurer makes no representations or warranties to the Insured, any Other Insureds, insurers, or others to whom this information is furnished by or on behalf of the Insured. Cancellation or non-renewal will be effective even if the Insurer inadvertently provides inaccurate information.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**END 001**

75213 (10/06)                               Page 2 of 2

ENDORSEMENT# 2

This endorsement, effective *12:01 am*   *January 1, 2007*   forms a part of
policy number   *966-37-95*
issued to *HUNTINGTON BANCSHARES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCESS INSURANCE POLICY FOR MANAGEMENT LIABILITY**

**OHIO AMENDATORY ENDORSEMENT**

The policy is hereby amended as follows:

Clause XI. DISPUTE RESOLUTION PROCESS, is deleted in its entirety and replaced with the following:

**XI. DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall upon mutual agreement between the Insurer and the Insured be subject to the dispute resolution process ("ADR") set forth in this clause.

The Insurer and Insureds agree that there shall be non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules in which the mediation panel shall be composed of three disinterested individuals. In mediation, the mediator(s) shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) shall also give due consideration to the general principles of the law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least one hundred twenty (120) days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Insured. The Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

*END 002*   AUTHORIZED REPRESENTATIVE

77364 (12/00)

## ENDORSEMENT# 3

This endorsement, effective *12:01 am*  *January 1, 2007*  forms a part of policy number *966-37-95*
issued to *HUNTINGTON BANCSHARES, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### KNOWN WRONGFUL ACT EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured alleging any Wrongful Act occurring between January 1, 2007 to January 17, 2007, if as of January 17, 2007 any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy. Loss arising out of the same or related Wrongful Act shall be deemed to arise from the first such same or related Wrongful Act.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 3*

## ENDORSEMENT# 4

This endorsement, effective *12:01 am*  *January 1, 2007*  forms a part of policy number *966-37-95* issued to *HUNTINGTON BANCSHARES, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

**END 004**

Page 1 of 1

89644 (7/05)

ENDORSEMENT# 5

This endorsement, effective 12:01 am    January 1, 2007    forms a part of
policy number   966-37-95
issued to HUNTINGTON BANCSHARES, INC.

by      National Union Fire Insurance Company of Pittsburgh, Pa.

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 74674 | 11/99 | Excess insurance policy NU Dec |
| 81285 | 01/03 | Tria Dec Disclosure Form |
| 74675 | 02/01 | Excess insurance policy NU |
| 75213 | 10/06 | OHIO AMENDATORY - CANCELLATION/NONRENEWAL |
| 77364 | 12/00 | OHIO AMENDATORY ENDORSEMENT |
| MNSCPT |  | KNOWN WRONGFUL ACT EXCLUSION |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | Forms Index Endorsement |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 005*

## ENDORSEMENT# 6

This endorsement, effective 12:01 am  January 1, 2008   forms a part of
policy number  966-37-95
Issued to  HUNTINGTON BANCSHARES, INC.

by  National Union Fire Insurance Company of Pittsburgh, Pa.

### POLICY PERIOD EXPANDED

In consideration of the additional premium of $396,875, it is hereby understood and agreed that Item 3 of the Declarations is deleted in its entirety and replaced with the following:

| 3 | **POLICY PERIOD**: From: January 1, 2007 To: January 1, 2009 12:01 A.M. standard time at the address stated in Item 1(a) |
|---|---|

It is further understood and agreed that the **Limit of Liability** for the expanded **Policy Period** shall be part of and not in addition to the **Limit of Liability** stated in the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**COPY**          **END 6**

ENDORSEMENT# 7

This endorsement, effective 12:01 am January 1, 2007 forms a part of policy number 966-37-95 issued to HUNTINGTON BANCSHARES, INC.

by National Union Fire Insurance Company of Pittsburgh, Pa.

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | POLICY PERIOD EXPANDED |
| PENMAN | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

(1/05)    COPY    END 007    Page 1 of 1

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

# ACORD — COMMERCIAL POLICY CHANGE REQUEST

**DATE (MM/DD/YYYY):** 07/02/2007

**PRODUCER**
PHONE (A/C, No, Ext): (614) 228-5565
FAX (A/C, No): (614) 228-6985
Wells Fargo Insurance Services of Ohio, LLC
N. 4th Street, Suite 400
Columbus, OH 43215-2153

**POLICY TYPE:** X UMBRELLA

**COMPANY:** National Union Fire Ins Co Pittsburgh PA

**NAIC CODE:**

**CODE:** **SUBCODE:**
**AGENCY CUSTOMER ID:** HUNTBAN-02

**INSURED'S NAME:** Huntington Bancshares Inc

**ATTENTION:**

**POLICY NUMBER:** 9663795

**EFFECTIVE DATE OF CHANGE:** 7/1/2007

**POLICY INCEPTION DATE:** 1/1/2007

**POLICY EXPIRATION DATE:** 1/1/2008

THIS IS AN ACKNOWLEDGEMENT OF YOUR REQUEST. UPON APPROVAL, THE COMPANY'S RECORDS WILL BE ADJUSTED ACCORDINGLY, AND IF A PREMIUM ADJUSTMENT IS REQUIRED, IT WILL BE DONE AT PREMIUM AUDIT OR BY ENDORSEMENT.

## PREMISES INFORMATION

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

## AUTO-VEHICLE DESCRIPTION/LIMITS

## DRIVER INFORMATION (List drivers who frequently use own vehicles)

## WORKERS COMPENSATION RATING INFORMATION

ACORD 175 (2001/08)    PLEASE COMPLETE REVERSE SIDE    © ACORD CORPORATION 1991

# PROPERTY/INLAND MARINE - PREMISES INFORMATION

HUNTBAN-02 VOL5

PREMISES #: | BUILDING #: | ADD | CHANGE | DELETE

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALUATION | CAUSES OF LOSS | INFLATION GUARD % | DEDUCTIBLE | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| CONSTRUCTION TYPE | | DISTANCE TO HYDRANT FT / FIRE STAT MI | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|
| BUILDING IMPROVEMENTS: WIRING, YR: ROOFING, YR: | PLUMBING, YR: HEATING, YR: OTHER: | BLDG CODE GRADE / TAX CODE | INSPECTED? YES NO | ROOF TYPE | OTHER OCCUPANCIES | | | |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|
| | | |

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | EXTENT | GRADE | CENTRAL STATION |
|---|---|---|---|---|---|
| | | | | | WITH KEYS |
| BURGLAR ALARM INSTALLED AND SERVICED BY | | | # GUARDS/WATCHMEN | | CLOCK HOURLY |
| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO₂/Chemical Systems) | | FIRE ALARM MANUFACTURER | | | CENTRAL STATION |
| | | | | | LOCAL GONG |

## INLAND MARINE - SCHEDULED EQUIPMENT

% COINSURANCE: | ADD | CHANGE | DELETE

| # | MODEL YEAR | DESCRIPTION (TYPE, MANUFACTURER, MODEL, CAPACITY, ETC) | ID #/SERIAL # | DATE PURCHASED | NEW/USED | AMOUNT OF INSURANCE |
|---|---|---|---|---|---|---|
| | | | | | | $ |
| | | | | | | $ |

## GENERAL LIABILITY - LIMITS

CHANGE

| GENERAL AGGREGATE | $ | DAMAGE TO RENTED PREMISES | $ |
|---|---|---|---|
| PRODUCTS & COMPLETED OPERATIONS AGGREGATE | $ | MEDICAL EXPENSE (Any one person) | $ |
| PERSONAL & ADVERTISING INJURY | $ | EMPLOYEE BENEFITS | $ |
| EACH OCCURRENCE | $ | | $ |

## GENERAL LIABILITY - SCHEDULE OF HAZARDS

| TYPE OF CHANGE | LOCATION # | CLASSIFICATION | CLASS CODE | PREMIUM BASIS | TERR | PREMIUM BASIS CODES |
|---|---|---|---|---|---|---|
| | | | | | | (S) GROSS SALES - PER $1,000/SALES |
| | | | | | | (P) PAYROLL - PER $1,000/PAY |
| | | | | | | (A) AREA - PER 1,000/SQ FT |
| | | | | | | (C) TOTAL COST - PER $1,000/COST |
| | | | | | | (M) ADMISSIONS - PER 1,000/AOM |
| | | | | | | (U) UNIT - PER UNIT |
| | | | | | | (T) OTHER |

## UMBRELLA

CHANGE

| LIMIT OF LIABILITY | $ | OTHER (DESCRIBE) |
|---|---|---|
| RETAINED LIMIT | $ | |

## ADDITIONAL INTEREST

ADD | CHANGE | DELETE

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|
| ADDITIONAL INSURED | | | | | PREMISES: / BUILDING: |
| LOSS PAYEE | | | | | VEHICLE: / BOAT: |
| MORTGAGEE (#___) | | | | | SCHEDULED ITEM NUMBER: |
| MORTGAGEE (#___) | | | | | OTHER |
| LIENHOLDER | | | | | |
| EMPLOYEE AS LESSOR | ITEM DESCRIPTION: | | | | |

## ADDITIONAL CHANGES/REMARKS

Adding Sky Bank
$10MM X $30MM Adding Sky Bank effective July 1, 2007
D&O/EPLI/Professional/Fiduciary/Bond/Computer Crime

SIGNATURE (Any deletion or reduction in coverage requires the Insured's signature)

| INSURED'S SIGNATURE | | PRODUCER'S SIGNATURE | *Donna M Wilson* |
|---|---|---|---|

ACORD 175 (2001/08)