# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK | ) | |
| | ) | Case No.: 2:20-cv-00256-JLG-KAJ |
| Plaintiff, | ) | |
| | ) | Judge James L. Graham |
| v. | ) | |
| | ) | Magistrate Judge Kimberly A. Jolson |
| AIG SPECIALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO THE HUNTINGTON NATIONAL BANK'S
<u>MOTION TO PRECLUDE DEFENDANTS' EXPERTS' OPINIONS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 5

      A.    Huntington's Motion Rests on Faulty Premises. ...................................................... 5

      B.    Defendants Properly Offered Rebuttal Expert Opinions ......................................... 7

      C.    The Court Should Consider Defendants' Expert Reports In Evaluating
Huntington's Motion for Partial Summary Judgment. ........................................ 11

III. CONCLUSION ................................................................................................................ 13

I.      **INTRODUCTION**

Defendants AIG Specialty Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. (together, "Defendants") respectfully submit this memorandum in opposition to The Huntington National Bank's ("Huntington") Motion to Preclude Defendants from Relying on Expert Opinions Related to Matters for Which Defendants Bear the Burden of Proof ("Motion") (Doc. No. 76).

Huntington's Motion incorrectly suggests that the success of Defendants' opposition ("Opposition") (Doc. No. 73) to Huntington's motion for partial summary judgment ("MPSJ") (Doc. No. 71) rises and falls on whether Defendants can rely on their rebuttal expert reports, which Defendants cited for certain narrow and discrete issues in their Opposition. In doing so, Huntington ignores the undisputed facts, Ohio law and the Policy provisions—set forth in Defendants' motion for summary judgment (Doc. No. 70), their reply brief in support of summary judgment (Doc. No. 77), and in their Opposition—all of which preclude coverage for the Claim made against Huntington, independent of any expert opinions. Furthermore, in making its arguments, Huntington ignores its own acceptance of Defendants' rebuttal experts and seems to suggest a contrary and impossible standard for rebuttal expert testimony. For all these reasons, Huntington's motion fails.

Huntington's MPSJ largely attempted to bypass the extensive record in the underlying litigation and the plain language of the Policy provisions at issue, instead arguing that each of the Policy exclusions were ambiguous and should therefore be construed in Huntington's favor, and that the industry history of banker's professional liability policies and the provisions of other professional liability policies should be considered as part of the Court's evaluation of coverage

under the Policy here.[1] In making several of its arguments with respect to industry custom and practice, Huntington used its experts' opinions *but failed to cite them*. Thus, Defendants' Opposition, *in addition to* demonstrating that the factual record, the Policy provisions, and Ohio law do not support summary judgment in Huntington's favor, rebutted Huntington's unsupported contentions about industry custom and practice, in part, by citing to Defendants' properly disclosed rebuttal experts.

Huntington itself submitted expert statements to support its opposition to Defendants' motion for summary judgment, Doc. Nos. 74-3, 74-4 (Exs. C and D to Huntington's Opp'n to Defs.' MSJ), thereby recognizing that the use of expert reports to oppose a summary judgment motion is proper. Perhaps in implicit recognition of the propriety of this use of expert reports, Huntington tries to buttress its effort to strike Defendants' experts by asserting that, although Defendants' experts properly rebutted the contentions that initially were made by Huntington's experts about the insurance industry *and* the Policy application and exclusions, Defendants' experts should have been disclosed at the same time that Huntington disclosed its experts. *See* Mot. at 3–4. Huntington's attempts to transform Defendants' rebuttal experts as improper primary experts is contradicted by Huntington's own actions and the nature of Defendants' expert reports. Defendants did not endorse primary experts because such expert testimony is not needed to resolve insurance coverage which is a question of law. *See* Doc. No. 70 (Defs.' MSJ)

---

[1] For example, after noting that the Huntington's application for the Policy did not contain a "polling" provision, Huntington insists that "AIG failed to do so even though insurers commonly include polling provision in their applications" without citing any support for this conclusion. MPSJ at 19.

2

at 17–18; Opp'n at 8 (citing *City of Cincinnati v. Metropolitan Design & Dev., LLC*, 1st Dist. Hamilton No. C-170708, 2019-Ohio-364, ¶ 28). Defendants, however, did properly endorse expert opinions to rebut Huntington's expert conclusions on industry custom and practice and Huntington has raised no objection to Defendants' properly designated experts.

After failing to object to Defendants' experts and after deposing them under oath, Huntington filed its MPSJ which advanced conclusions drawn directly from its own experts but did not cite to them. While Huntington may be entitled to its strategy of not citing to its experts while using their opinions in Huntington's MPSJ, Defendants should not be precluded from relying on their own experts to rebut Huntington's generalizations about industry custom and practice simply because Huntington chose to adopt, without attribution, its experts' opinions in its own motion for partial summary judgment.

Additionally, Huntington tries to recharacterize the burden of proof with respect to "Loss" to further buttress its argument. Under Ohio law, Huntington bears the initial burden of proof to establish Loss under the Policy, which it has not done. *Gehrisch v. Chubb Grp. of Ins. Companies*, 645 F. App'x 488, 491 (6th Cir. 2016) (recognizing that under Ohio law, "[t]he insured bears the initial burden of proving that the policy covers the claimed loss"). Huntington, however, characterizes the expert opinions related to the definition of Loss as "Opinions Related To AIG's Claims That Policy Exclusions Preclude Coverage," in an attempt to shift this burden to Defendants. Mot. at 4. The Policy definition of Loss specifically states that it does not encompass matters that are uninsurable as a matter of law, such as the disgorgement of wrongfully acquired funds. Notably, Huntington did not even attempt to satisfy its burden to prove a covered Loss in its MPSJ, instead relying on the conclusory statement that coverage is

3

"undisputed," MPSJ at 7, 22, and reframing requirements of the Policy's insuring agreement as "exclusions" to the Policy.  *See* MPSJ at 26 (calling the definition of Loss a punitive damages "exclusion").  As Defendants explained in their Opposition, Defendants <u>do</u> dispute whether Huntington incurred a Loss under the Policy as well as whether the Claim was first made within the Policy Period.  Opp'n at 5–8.  Huntington bears the initial burden of proof on these issues.

Last, there is no prejudice to Huntington.  Defendants' expert rebuttal reports were properly disclosed to Huntington in accordance with both the Court's deadlines in this case and Rule 26(a)(2)(D)(ii) and are not "prejudicial" to Huntington.  Mot. at 8.  Huntington presented experts that resulted in Defendants presenting rebuttal experts on the same subject matter.  Defendants submitted their signed rebuttal reports to Huntington by the Court's deadline of September 20, 2021, and Huntington had an opportunity to and did, in fact, depose both of Defendants' rebuttal experts in October 2021 where those experts gave *sworn* testimony under oath regarding their reports.  Notably, Huntington never raised an issue about the propriety of the rebuttal reports, either before or after the depositions.  Thus, Huntington's assertion that Defendants' expert rebuttal reports "are prejudicial in that they have denied Huntington the opportunity to have rebutted AIG's experts' primary opinions with its own experts," Mot. at 8, has no merit.  The reports were properly submitted pursuant to the Scheduling Order, and in the months after receiving them, Huntington never even raised the prospect of submitting further reports.  Further, the excerpts of the expert opinions that Defendants cited in their Opposition posed no surprise to Huntington as they were consistent with Defendants' coverage positions that Huntington has known since Defendants sought leave to amend their answer in April 2021.  *See* Doc. No. 40 (Mot. for Leave); Doc. No. 52 (Amended Answer).  Even Huntington acknowledges

4

that Defendants' expert reports actually do in fact rebut the opinions of Huntington's experts. Mot. at 3–4.

Thus, to the extent that the Court considers Huntington's unsupported assertions regarding insurance industry custom and practice in its own MPSJ, the Court should also consider the properly tendered rebuttal opinions of Defendants' experts on that same subject matter in Defendants' Opposition to Huntington's MPSJ.  Fed. R. Civ. P. 26(a)(2)(D)(ii).

## II. ARGUMENT

### A. Huntington's Motion Rests on Faulty Premises.

Huntington's Motion incorrectly asserts that, absent Defendants' expert reports there is no factual record to support the application of the Policy exclusions and Defendants' defenses. From this incorrect starting point, it seeks to preclude Defendants' use of rebuttal experts to respond to Huntington's MPSJ contentions about industry custom and practice.  Huntington's argument ignores the record before the Court and Huntington's own burden to prove coverage under the Policy.

Defendants' Opposition demonstrated that Huntington cannot prevail on summary judgment—entirely independent of Defendants' experts' rebuttal opinions.  Pursuant to Ohio law, Huntington did not incur a Loss under the Policy for its return of fraudulently transferred loan payments.  Doc. No. 18-5 (Report and Recommendation); *Meoli v. Huntington Nat'l Bank*, No. 1:12-CV1113, 2015 WL 5690953, at *13 (W.D. Mich. Sept. 28, 2015); *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716, 720, 735 (6th Cir. 2017); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2011 WL 4543896, at *11 (S.D. Ohio Sept. 29, 2011), modified, No. 2:07-CV-1285, 2011 WL 6371901 (S.D. Ohio Dec. 20, 2011) (recognizing

5

that a matter is uninsurable under Ohio law in "circumstances involving the insured being 'required to restore to the plaintiff that which was wrongfully acquired'"). In addition, the Claim made against Huntington does not appear to fall within the Policy's Insuring Agreement because it did not meet the Policy's requirement that the Claim be "first" made during the Policy Period (January 1, 2007 to January 1, 2008); it is undisputed that Huntington received a draft complaint (a written demand) from the bankruptcy trustee for the fraudulent transfers at issue no later than December 7, 2006. Doc. No. 73-5 (Dec. 7, 2006 email). Defendants also established, based on the undisputed factual record, in its own motion for summary judgment—which did not rely on any expert testimony—that Policy exclusions preclude coverage for the Claim made against Huntington. The exclusion in Endorsement #10 applies because a judgment and a written admission of Huntington established that Huntington received a profit or advantage to which it was not entitled. *See* Doc. No. 73 (Opposition) at 24–28. The exclusion in Endorsement #7 applies because Huntington seeks to recover for "unrepaid, unrecoverable or outstanding" loan repayments. *Id.* at 28–31. The exclusion in Endorsement #5 applies because the Claim involved a loan owned by Huntington for more than 12 months. *Id.* at 31–34.

Defendants also established that, at a minimum, there appear to be disputed material facts on certain issues such as whether the exclusion contained in Huntington's Policy application regarding prior knowledge, which was incorporated into the Policy, applies. For example, Huntington disputes the factual record, including Huntington's attorney billing invoices, which demonstrates that Huntington had prior knowledge of an act, error or omission reasonably likely to give rise to a Claim against Huntington when it signed the application for the insurance Policy. *Id.* at 37–50.

6

Moreover, Huntington's assertions in its Motion regarding the burden of proof are incorrect. Under Ohio law, the insured bears the initial burden of establishing coverage which includes proving "Loss" and Claim "first" made. *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 520 (6th Cir. 2011) (applying Ohio law). Huntington's assertion that it need not satisfy the definition of Loss in the Policy is contrary to Ohio law. *See Gehrisch v. Chubb Grp. of Ins. Companies*, 645 F. App'x 488, 491 (6th Cir. 2016). For example, in *Gehrisch*, the court rejected the insured's argument that his "all-risk" policy relieved him of the obligation to prove that the Loss was of the type covered by the Policy. *Id.* ("while [the insured] established that the collision was an event triggering coverage under the Policy, he did not establish that diminution in value was the *type* of loss covered by the Policy."). Here, Huntington similarly argues that so long as it establishes that the Claim arose out of professional services it provided to Cyberco, it is not necessary to establish that it incurred a Loss as defined by the Policy. Mot. at 2; MPSJ at 24. Huntington, however, cannot evade its burden under Ohio law to prove a Loss under the Policy. The same is true with respect to Huntington's initial burden to prove that the Claim was "first" made within the Policy Period: a requirement for coverage under the Insuring Agreement. Doc. No. 70-6 (Policy) at 1, Clause 1. Therefore, based on its own incorrect premise, Huntington's motion to strike fails to the extent any rebuttal opinions addressed issues upon which Huntington has the initial burden of proof.

### B.     Defendants Properly Offered Rebuttal Expert Opinions

As an initial matter, Huntington does not contest that Defendants complied with Fed. Rule 26(a)(2)(D)(ii) regarding the designation of Defendants' experts "to contradict or rebut evidence on the same subject matter" identified by Huntington in its expert disclosures.

7

Huntington does not dispute that Defendants timely submitted the rebuttal reports by the deadline for disclosing rebuttal experts in this case (September 20, 2021) or that the reports were signed by the experts.  Mot. at 2, 3.  Huntington's Motion seeks to strike Defendants' expert rebuttal reports "for purposes of [Defendants'] Opposition," Mot. at 1, but does not otherwise raise any objection to Defendants' properly designated rebuttal experts.[2]

Contrary to Huntington's assertions, Defendants' Opposition did not cite to their experts' reports to satisfy Defendants' "burden of proof," Mot. at 4, but used their properly tendered rebuttal reports to contradict and rebut the subject matter of Huntington's own experts' opinions.  Huntington contends that it "relied solely on evidence, or pointed out the lack thereof, in the record and the law," but in its MPSJ, Huntington relies on unsupported contentions about industry custom and practice for some of its arguments.  Huntington's opinions on industry custom and practice were the same as those tendered by Huntington's expert witnesses—but Huntington failed to provide citations to its expert reports.  For example, in its MPSJ, Huntington states that "it is *industry-standard practice* for insurers wishing to condition coverage on the accuracy of their insureds' policy application to include" a warranty statement.  MPSJ. at 38 (emphasis added).  Although Huntington did not provide any citation for this statement, Defendants note that "warranty" was a concept originally introduced in an opinion by

---

[2] The relief Huntington requests in its Motion is limited to the striking of Defendants' "rebuttal expert opinions related to those issues for which [Defendants] bear[] the burden of proof for purposes of [their] Opposition to Huntington's Motion for Partial Summary Judgment" and does not seek to exclude Defendants rebuttal expert testimony more broadly.  Mot. at 1.

8

Huntington's expert.³ Thus, in response to Huntington's conclusory statements about warranty, Defendants referred to Ms. Parker's rebuttal opinion regarding the language used in the application and whether the statements contained therein operated as a "warranty."

In short, Defendants' reliance on experts to rebut Huntington's statements about industry custom and practice in Huntington's MPSJ was not offered on an issue for which Defendants bear the burden of proof, but was instead offered to refute Huntington's experts' opinions on industry custom and practice.⁴ Huntington's failure to provide citations to its own experts while still offering their opinions in its MPSJ, does not and cannot bar Defendants from rebutting those opinions. Defendants are entitled to rebut the subject matter of Huntington's expert opinions. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Similarly, Huntington was relying on the uncited opinion of its expert when it asserted in its MPSJ that the $5 million limit of liability in Endorsement #7 does not apply because "lender liability provisions, like the one at issue here, are designed to deal specifically with front-end and back-end activities." MPSJ at 34. *See* Doc. No. 74-3 (Ex. C to Huntington's Opp'n to Defs.' Mot. for Summ. J.) (Declaration of L. Goanos) at ¶ 25 ("the insurance industry separated lender liability insurance coverage into two categories. They were categorized within the insurance

---

³ "Warranty" may be an issue if an insurer is seeking to have the entire policy deemed *void ab initio*, but that is not the relief sought by Defendants in this matter.

⁴ Defendants' Opposition establishes that the plain language of the exclusion in the Policy application precludes coverage of the Claim made against Huntington because Huntington had prior knowledge of "an act, error or omission which might reasonably be expected to give rise to a claim under the proposed policy." *See* Opp'n at 41–45.

9

industry as 'front-end' and 'back-end' lender liability coverage."). Endorsement #7 does not contain any reference to "front end" or "back end" activities (Defendants Opp'n at 30), and Huntington did not provide any relevant law or Policy language to support its statement in its MPSJ.  In response, Defendants expressed their disagreement with Huntington's "'historical' understanding of professional liability policies" and stated that their rebuttal expert Diane Parker dispelled the "notion" that there is a "typical" banker's professional liability policy.  Opp'n at 30, n. 25.  Again, Defendants' citation to Ms. Parker's report was not to support its "case in chief," but to rebut the uncited opinion of Huntington's expert on extrinsic evidence of industry custom and practice.  The ability of a party to tender rebuttal expert opinions does not turn on whether the opposing party properly includes citations to its experts' opinions.

      In other instances, Defendants directed the Court to their experts' reports for more thorough summaries of the relevant factual background contained within those reports—and not for the expert opinions themselves.  For example, Defendants directed the court to the expert reports for "a more extensive review of the numerous Warner Norcross invoices indicating Huntington's prior knowledge of the Claim." Opp'n at 42.  The expert reports were cited for their factual summaries of Huntington's attorney billing records, which Defendants explained were "extensive and span[] over two years and tens of thousands of dollars in legal work." *Id.* at 42, n. 37.  The reports contained the same factual information as in the other exhibits to Defendants' Opposition, but in a more convenient form.  *See, eg.,* Ex. 1 to Opp'n (WNJ Invoices).

      Defendants' Opposition, like Defendants' own Motion for Summary Judgment, set forth in detail, the factual record, Ohio law, and the plain language of the Policy provisions that

10

supported Defendants' argument that there is no coverage for Huntington. Defendants' use of expert testimony was in addition to such evidence and for the sole purpose of refuting Huntington's generalizations about industry practice set forth in its MPSJ. Accordingly, the Court should exercise its discretion to consider the expert witness opinions when deciding Huntington's MPSJ. *See R.G. Barry Corp. v. Olivet Int'l, Inc.*, No. 2:15-CV-826, 2017 WL 4349067, at *10 (S.D. Ohio Sept. 29, 2017) (the decision of whether to consider rebuttal expert reports falls within the sound discretion of the trial court).

    **C.    The Court Should Consider Defendants' Expert Reports In Evaluating Huntington's Motion for Partial Summary Judgment.**

Huntington's assertion that the Court should refuse to consider Defendants' signed expert reports because they were not submitted under penalty of perjury relies on outdated case law and is incorrect. Huntington cites case law relying on an out-of-date version of Federal Rule of Civil Procedure 56, prior to its amendment in 2010. *See* Mot. at 10–11 (citing *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81, 488 (6th Cir. 2008); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006); *Shaffer v. CSX Transp.*, Inc., 462 F. App'x 597, 602 (6th Cir. 2012)). Ohio courts have noted that "since *Sigler*, Rule 56 has been substantially amended and revised, and subdivision (e) of the former Rule 56, which governed the admissibility of evidence for purposes of summary judgment, has been largely omitted." *Davis v. United States*, 302 F. Supp. 3d 951, 956 (S.D. Ohio 2017). In *Davis*, the court noted that *Pack* and *Schaffer*, in addition to relying on decisions prior to the 2010 amendments, also stood for the proposition that an unsworn expert report is inadmissible when offered by the *moving party* in support of its motion for summary judgment. *Id.* at 956. In contrast, the court held that where "*the non-moving party*[] is offering

11

an unsworn expert report in opposition to [a] motion for summary judgment," the report is "proper for consideration" so long as it is "capable of being reduced to an admissible form." *Id.* at 956 (emphasis added).

Other courts recognize that the 2010 amendments have changed the necessity for sworn expert reports. For example, in finding that a district court abused its discretion in declining to consider the unsworn expert report of a non-moving party when ruling on summary judgment, the Fifth Circuit explained that

> the district court mistakenly relied on a prior version of Federal Rule of Civil Procedure 56 and cases applying it. New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial.

*Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (citations omitted).

Huntington has made no argument that Defendants' signed expert reports are not capable of being reduced to an admissible form. Both experts properly signed their reports, which were submitted to Huntington well in advance of the parties' summary judgment motions. *See* Doc. No. 73-3 (Expert Report of D. Parker); Doc. No. 73-4 (Expert Report of F. Fisher). Huntington then deposed both experts who gave extensive sworn testimony about the opinions in their reports. Indeed, Huntington has not actually stated that there is anything improper about Defendants' experts' reports at all. Huntington instead asserts that the reports should be rejected as inadmissible hearsay solely because they are "unsworn." Mot. at 10–11. But even a "sworn" expert declaration would be technical hearsay, as it is an out-of-court statement for the truth of

12

the matter asserted.[5] *Off. Comm. of Unsecured Creditors v. Hendricks*, No. 1:04-CV-066, 2008 WL 3007989, at *4, n.3 (S.D. Ohio Aug. 1, 2008), aff'd, No. 1:04-CV-066, 2008 WL 4185938 (S.D. Ohio Sept. 3, 2008) ("Of course, the affidavit itself is hearsay – an out-of-court statement offered to prove its content."). Further, Huntington's contention is contrary to the current Federal Rules and the decisions of federal courts in this district and others.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Huntington's Motion.

Dated: February 4, 2022                     Respectfully Submitted:

*/s/ Matthew S. Brown*
Matthew S. Brown (0077687) (Trial Attorney)
Carlile Patchen & Murphy LLP
366 East Broad Street
Columbus, OH 43215
Email: mbrown@cpmlaw.com
Phone No.: (614) 228-6135
Fax No.: (614) 221-0216

Timothy R. Macdonald, *pro hac vice*
Suneeta Hazra, *pro hac vice*
Arnold & Porter Kaye Scholer LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
Phone No.: (303) 863-1000
Fax No.: (303) 863-2301

---

[5] Defendants note that Huntington itself submitted expert statements in support of its opposition to Defendants' motion for summary judgment. *See* Doc. Nos. 74-3, 74-4 (Exs. C and D to Huntington's Opp'n to Defs.' MSJ). Notably, while Huntington had its expert swear to their opinions, Huntington added previously undisclosed opinions that were not contained in their actual expert reports.

13

*Attorneys for Defendants AIG Specialty Insurance Company, et al.*

14

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed with the Clerk of the Court on February 4, 2022 using the CM/ECF system, which will send notice to all counsel of record.

                                                  */s/ Matthew S. Brown*

                                                  Matthew S. Brown (0077687)

                                                  *Attorney for Defendants AIG Specialty Insurance Company, et al.*